Wallace A. ZIMMERMAN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: March 21, 1989.
Decided: Sept. 21, 1989.

Lawrence A. Ramunno, of Ramunno & Ramunno, Wilmington, for appellant.

Gary A. Myers, Deputy Atty. Gen., Wilmington, for appellee.

Before CHRISTIE, C.J., and MOORE and HOLLAND, JJ.

CHRISTIE, Chief Justice.

The defendant/appellant, Wallace A. Zimmerman ("Zimmerman"), was convicted of arson in the first degree, possession of a deadly weapon during the commission of a felony, possession of a destructive weapon, and criminal mischief. The Superior Court sentenced Zimmerman to consecutive terms of imprisonment totaling eight and one-half years for the first three offenses, to be followed by six months of probation for the

last offense. All four of the convictions arose from an incident in which a home-made pipe bomb was thrown into the home of the victim.

On appeal, Zimmerman contends that the trial court erred in (1) allowing testimony of prior bad acts by the defendant to come into evidence without a limiting instruction to the jury; (2) instructing the jury on accomplice liability although the prosecution made no mention of that theory during trial; (3) permitting the prosecution to make improper and prejudicial remarks to the jury during closing argument without remedial action; and (4) sentencing defendant for three separate charges stemming from the same offense and thus violating the double jeopardy clause of the fifth amendment.

We find that defendant's contentions are without merit. Therefore, we affirm the decision of the Superior Court but we re-mand the case to the Superior Court to rearrange the sentencing to conform to 11 *Del.C.* § 1447(c).

On September 16, 1986, a pipe bomb exploded on the second floor of the residence of Sistilio Popo ("Popo"). The appellant, Zimmerman, was arrested for throwing the bomb that caused the explosion into the victim's house.

In early 1986, Cindy Marta ("Marta") had been Popo's girlfriend. By July, 1986, however, Marta had begun to date the defendant. Popo had purchased an automobile for Marta when they were seeing each other. After Marta started dating Zimmerman, Popo attempted to have the car's title, which had been in both his and Marta's names, transferred to his name alone. Before he was able to accomplish this, however, Marta was able to have the title transferred to her name alone. The dispute over the car contributed to the hard feelings between Popo and Zimmerman. Popo testified that a few weeks before the bombing, Zimmerman had attempted to attack Popo with a crowbar. Popo moved out of the way and was not injured, but police were called as a result of the incident. In addition, Popo testified that his reputation as a police informant compound-ed the "bad blood" between himself and Zimmerman when Zimmerman's brother was arrested on drug charges.

At trial Popo testified that on September 16, 1986, he was in his house with his family, his girlfriend, and two other friends when he heard the sound of breaking glass on the second floor. Popo and his two friends ran out of the house to see who was responsible. When Popo got outside no one was in sight. At that time, the bomb exploded on the second floor. The blast, caused by a bomb fashioned from a piece of plumbing pipe filled with black powder, blew out two windows in Popo's bedroom. Although several people were still inside the house, no one was injured.

Edward Foraker ("Foraker"), a neighbor of Popo, testified that upon hearing the explosion, he went outside. He then saw two white males walking away from Popo's house. When they saw Foraker they started to jog. The two men got in a car of the same make as Zimmerman's and sped off without turning on the headlights.

At the time of the incident, one of Popo's friends was out driving with a companion. Immediately after the explosion, they drove onto the street where Popo lived. They both saw a car which was of the same color and make as the defendant's car being driven off. Both were sure that the person who was driving the car was Zimmerman.

James R. Hedrick ("Hedrick"), of the New Castle County Police Department, testified that he contacted Marta on the telephone after the incident. Marta told Hedrick that she had not seen Zimmerman all that day or evening. The police arrested Zimmerman the next day. At trial, both Marta and Zimmerman testified that Zimmerman had been with Marta at the time of the explosion.

The bomb which caused the explosion had been fashioned from a piece of pipe filled with black powder. A neighbor of Zimmerman's brother testified that in September, 1986, while Zimmerman was residing with his brother, she often heard loud explosions in a vacant lot behind a shed in which Zimmerman's brother stored pipe and other plumbing supplies.

The jury in Superior Court found Zimmerman guilty of the various charges and the sentences listed above were imposed.

### I.

Zimmerman contends that the trial court erred in allowing testimony relating to prior bad acts by the defendant. Defendant also contends that the failure of the court to provide a limiting instruction as to the use of evidence relating to the prior bad acts was unduly prejudicial.

■ During the trial, counsel did not object to the introduction of the evidence of defendant's prior bad acts. The evidence involved threats the defendant made to the victim with a crowbar. Under Supreme Court Rule 8 [1] this issue is not properly before this Court and will not be considered unless plain error is found to exist. *See Bowe v. State*, Del.Supr., 514 A.2d 408, 411 (1986).

■ Evidence of prior bad acts by a defendant is not admissible as proof of a crime. Del.R.Evid. 404(a); *Johnson v. State*, Del.Supr., 311 A.2d 873, 874 (1973). However, Delaware Rule of Evidence 404(b) also provides that evidence of prior bad acts "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Del.R.Evid. 404(b); *Diaz v. State*, Del.Supr., 508 A.2d 861, 865 (1986). In this case the prosecution's use of prior bad acts comes within the scope of permissible use as outlined in Rule 404(b), since such evidence is relevant to defendant's motive. Under the circumstances the admission of this evidence did not constitute plain error, and a limiting instruction was not essential.

In addition, the defendant takes issue with hearsay testimony introduced during examination of Popo at trial over counsel's objection. The trial court properly ruled at that time that the testimony went to Popo's state of mind rather than to prove the truth of the matter asserted. This ruling of the trial court was correct.

### II.

The defendant next contends that the trial court erred by instructing the jury as to accomplice liability. The defendant contends that it was inappropriate for the trial court to give a charge to the jury on this theory of liability because the prosecutor did not rely on it during the trial or request a jury charge on it.

■ The defendant did not object to the trial court's decision on accomplice liability nor to the supplemental instruction. Therefore, this issue may be reviewed only under a plain error standard as provided for by Supreme Court Rule 8.

■ The primary purpose of jury instructions is to define with substantial particularity the factual issues, and clearly to instruct the jury as to the principles of law which they are to apply in deciding the factual issues involved in the case before them. *United States v. Anderton*, 5th Cir., 629 F.2d 1044, 1048 (1980) (citing *United States v. Gilbreath*, 5th Cir., 452 F.2d 992, 994 (1971)). The parties are entitled to all instructions on the theories of the case, provided the instructions are timely requested, supported by evidence, and correctly state the law. *United States v. Jerde*, 8th Cir., 841 F.2d 818, 820 (1988). As a general rule, a party should submit specific written requests for jury instructions in order to present its contentions to the trial court and preserve these contentions for a possible appeal. Super.Ct. Crim.R. 30(a).

■ The instruction given in this case, however, was in response to a specific question posed to the court by the jury. It did not stem from a request from the defendant or from the State. On request of the jury after submission of the cause, a trial court has power in open court to give additional instructions. 76 Am.Jur. 2d Tri-

---

**1.** Supreme Court Rule 8.   *Questions Which May be Raised on Appeal*

Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.

al § 1046 (1975). A trial court acts in its discretion when deciding to give the jury a supplemental instruction. *Sheeran v. State,* Del.Supr., 526 A.2d 886, 893 (1987).

During the trial, testimony had been presented that the defendant was seen fleeing the scene of the crime with another individual. Therefore, possible accomplice liability could have been anticipated. A trial court must give instructions to a jury as required by evidence and law whether the parties request the instruction or not. *United States v. Cooper,* 10th Cir., 812 F.2d 1283, 1286 (1987). *See also Lovett v. State,* Del.Supr. 516 A.2d 455, 468 (1986) *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 504 (1987) (holding that evidence presented at trial clearly justified the trial court's accomplice liability instruction and did not cause defendant prejudice or unfair surprise, even though details of accomplice liability were not disclosed in bill of particulars). Under all of these circumstances and in the absence of any showing of prejudice, the supplemental jury instruction on the theory of accomplice liability will not be deemed to be reversible error.

The defendant also contends that upon giving the supplemental instruction the trial court erred because it did not reiterate a unanimity instruction. This Court has held that a specific unanimity instruction is not required where a single defendant may be convicted as either a principal or an accomplice. *Probst v. State,* Del.Supr., 547 A.2d 114, 122 (1988) (holding that, in the absence of a specific request from defendant or other unusual circumstances, a general unanimity instruction is sufficient). We rule that the failure of the trial court to give a second unanimity instruction to accompany the accomplice instruction was not improper.

## III.

Next, the defendant contends that the prosecutor improperly injected expressions of his own opinions during the closing argument. However, no objection to the prosecutor's closing argument was made at trial. "This Court has repeatedly emphasized the necessity of making timely objections to closing remarks by opposing counsel which are arguably improper." *Michael v. State,* Del.Supr., 529 A.2d 752, 762 (1987) (citing *Hooks v. State,* Del.Supr., 416 A.2d 189 (1980)). In general, "failure to object constitutes a waiver of defendant's right to raise the issue on appeal." *Goddard v. State,* Del.Supr., 382 A.2d 238, 242 (1977). Since defendant did not object to the remarks during the trial, this Court may not overturn the jury decision absent a showing that the remarks amounted to plain error. *Id.;* Supr.Ct. R. 8. The standard for determining plain error hinges on "whether the prosecutor's statements amounted to plain or fundamental error so as to 'clearly deprive [defendant] of a substantial right, or which clearly show manifest injustice.'" *Michael v. State,* 529 A.2d at 762 (quoting *Ward v. State,* Del. Supr., 366 A.2d 1194, 1197 (1976)).

The defendant's contention is that the use of the word "I" by the prosecutor injected his personal opinions into the case and constituted such prejudice as to rise to the level of plain error. This Court has previously indicated that "arguments in the first person are extremely dangerous and should be assiduously avoided." *Brokenbrough v. State,* Del.Supr., 522 A.2d 851, 859 (1987) *(per curiam ).* However, although the use of the first person is inappropriate, it does not *per se* constitute reversible error. *Id.*

In reviewing charges of improper prosecutorial remarks, the Court employs the three-prong test set out in the case of *Hughes v. State,* Del.Supr., 437 A.2d 559 (1981). In that opinion it was stated that "[t]he decisive factors are the closeness of the case, the centrality of the issue affected by the [alleged] error, and the steps taken to mitigate the effects of the error." *Id.* at 571 (quoting *Dyson v. United States,* D.C.App., 418 A.2d 127, 132 (1980)). Using this test, we find that the case was not close and there was ample evidence in the record to support the jury's verdict. We also find that the improper remarks by the prosecutor were not central to the case,

and we have noted that defendant did not request that any steps be taken to mitigate the effects of the error. We hold that under the circumstances the prosecutor's remarks do not constitute reversible error.

## IV.

Finally, the defendant contends that separate convictions and sentences for three violations arising out of a single event constitute impermissible "multiple punishments" for the "same offense" and thus violate the double jeopardy clause of the fifth amendment

In this case, the defendant was convicted of arson in the first degree, possession of a deadly weapon during the commission of a felony, possessing a destructive weapon, and criminal mischief. The defendant contends that because the first three offenses arose from a single incident and because they all concerned the homemade bomb, he should be subject to sentencing for only one offense.

The United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), formulated the test to determine whether two convictions are the same offense for double jeopardy purposes. "A single act may be prosecuted as separate crimes and ... separately punished under different statutory provisions if each offense requires proof of an element that the other does not." *See also State v. Skyers*, Del.Supr., 560 A.2d 1052 (1989) (citing *Jefferson v. State*, Del. Supr., 543 A.2d 339 (1988) (ORDER)).

It has also been held that if "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *LeCompte v. State*, Del. Supr., 516 A.2d 898, 901–02 (1986) (citing

*Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 544 (1983) (footnote omitted)).

In this case, we address the arson and weapons crimes as they relate to each other, as well as the two weapons offenses as they relate to each other, independent of the crime of arson, to determine if there is a violation of the double jeopardy clause.

■ To prove arson first degree under 11 *Del.C.* § 803, the State must show that the defendant 1) intentionally damaged a building by starting a fire or causing an explosion, and 2) knew that another person, other than an accomplice, was present in the building.

To obtain a conviction on the charge of possession of a destructive weapon under 11 *Del.C.* § 1444, the State must prove that the defendant possessed certain proscribed items.[2]

To obtain a conviction of possession of a deadly weapon during the commission of a felony under 11 *Del.C.* § 1447, the State must prove that the defendant was in possession of a deadly weapon during the commission of a felony.

■ The arson and the weapons charges require different proofs and therefore constitute separate offenses which may be the subject of separate sentences. The destructive weapon provision is aimed at those who possess destructive instruments, and there is no requirement that the proscribed item be used. The charge of possession of a deadly weapon requires proof of separate felonious conduct, a requirement not present in any other charge brought against the defendant. The arson charge is result-oriented and requires, among other things, proof of a fire or explosion and intentional damage to a building. It does not, however, require proof that the accused used or possessed a destructive weapon or a deadly weapon.

2. 11 *Del.C.* § 1444 states, in pertinent part, that:
A person is guilty of possessing a destructive weapon when he sells, transfers, buys, receives or has possession of a bomb, bomb-shell, firearm silencer, sawed-off shotgun, machine gun or any other firearm or weapon which is adaptable for use as a machine gun.

Separate sentencing under the two weapons offenses does not violate the double jeopardy clause. It is clear that the legislature intended cumulative punishments under both 11 *Del.C.* § 1444 and § 1447 because the two statutes work to prevent distinct evils. Section 1444 prohibits the general public from obtaining "especially dangerous and destructive weapons" because "[g]enerally, there is no legitimate reason why a citizen would be in possession of such weapons." *Delaware Criminal Code with Commentary*, Commentary on sec. 1444 at 464 (1973). Section 1447 is designed to discourage the accessibility of a deadly weapon during the commission of a felony and thus obviate the enhanced danger thereby posed to a victim. *Mack v. State*, Del.Supr., 312 A.2d 319, 321 (1973). It reflects a specific legislative intent to punish more severely those who commit felonies while in possession of a deadly weapon. The purpose of this provision is to deter such conduct and lessen the risk to victims. *DeShields v. State*, Del.Supr., 534 A.2d 630, 647 (1987); *LeCompte v. State*, Del.Supr., 516 A.2d 898, 902 (1986).

Since the legislature has defined the three offenses at issue as separate offenses with separate elements and has shown an intent to provide for separate sentencing, we find no double jeopardy. Under the circumstances the trial court did not err when it permitted convictions to go forward on four offenses and sentenced defendant on four separate charges.

\* \* \*

The State draws attention to one issue that was not raised by the defendant. The Superior Court sentenced the defendant to three years of incarceration for the crime of possession of a deadly weapon during the commission of a felony, to be followed by four years of incarceration for the underlying felony of arson. However, 11 *Del.C.* § 1447(c) provides that a "person shall serve the sentence for the felony itself before beginning the sentence imposed for possession of a deadly weapon during such felony." Therefore, the convictions in the Superior Court are AFFIRMED, but the case is REMANDED to the Superior Court for the limited purpose of resentencing to conform to the statutory requirement.