Robert J. WATSON, Commissioner of the Delaware Department of Corrections and Cathy Guessford, Defendants Below, Appellants,

v.

Ricky D. BURGAN, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: June 9, 1992.
Decided: July 2, 1992.

---

Richard E. Fairbanks, Jr. (argued), Chief of Appeals Div., and Loren C. Meyers, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellants.

Bernard J. O'Donnell (argued), and Brian J. Bartley, Asst. Public Defenders, Office of Public Defender, Wilmington, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from the granting of a writ of mandamus by the Superior Court directing officials of the Delaware Department of Corrections ("the Department") to recompute the sentence of Ricky D. Burgan ("Burgan") and permit his release from imprisonment. The Superior Court ruled that a 1990 Addendum to Department regulations, adopted upon the advice of the Attorney General, incorrectly repealed an earlier administrative regulation as contrary to Delaware statutory law. We agree and affirm.

I

The facts underlying the mandamus proceedings in the Superior Court are not in dispute. Burgan pled guilty in 1982 to assault in the first degree and possession of a deadly weapon during the commission of a felony. He was sentenced to ten years imprisonment for the assault offense and to a mandatory minimum five year sentence for the weapon offense to be served following the underlying sentence for assault. By its terms, therefore, the sentencing order complied with 11 *Del. C.* § 1447(c).[1]

Despite the unambiguous language of section 1447(c), the Department had a longstanding practice of "administratively realigning" prisoners' sentences for purposes of calculating parole eligibility dates and conditional release dates based on good time credits. This practice was guided by Department Regulation 1134 (the "original regulation"), which authorized Department records personnel to aggregate the terms of the underlying felony and the weapon offense. Against this total would be calculated the prisoner's parole eligibility date and his conditional release date. In its calculation, the Department placed any mandatory sentence, which in Burgan's case happened to be the entirety of the weapon sentence, as served at the beginning of the entire term of imprisonment. As a result, Burgan was provided with a sentence status sheet reflecting his ineligibility for parole during the first five years of his sentence as opposed to a restriction during the first three and one-half years had parole been calculated solely upon a combined fifteen year sentence. Thus, for parole and conditional release date purposes Burgan was administratively determined to be serving the weapons sentence before that of the underlying assault sentence contrary to the terms of section 1447(c).

In October 1990, the Department, acting in accordance with an advisory opinion issued by the Attorney General, promulgated an addendum which purported to revise the method for calculating parole eligibility and conditional release dates. The apparent purpose of the addendum was to ensure that mandatory weapons sentences would be served after, not before, the sentence for underlying felonies, in literal compliance with section 1447(c). Pursuant to the addendum, the Department recalculated Burgan's parole eligibility and conditional release dates. This recalculation resulted in the revocation of Burgan's then existing right to apply for parole and resulted in the extension of his conditional release date from February 20, 1991 to October 13, 1992. Burgan, who was then in work release status at the Plummer Center, had his work release status revoked and was returned to confinement.[2]

In June 1991, Burgan filed a complaint seeking declaratory and mandamus relief. In granting relief, the Superior Court concluded that section 1447(c) was unclear in its application and required construction in view of the contrasting interpretations between the original regulation and the addendum. The Superior Court ruled that the original regulation was consistent with a reasonable reading of the statute in view of its legislative history. The Court noted that section 1447 was intended to guide sentencing, not the administrative determination of parole eligibility and good time

---

1. Section 1447(c) provides:

Any sentence imposed upon conviction for possession of a deadly weapon during the commission of a felony shall not run concurrently with any other sentence. In any instance where a person is convicted of a felony, together with a sentence for possession of a deadly weapon during the commission of such felony, such person *shall serve* the sentence for the underlying felony itself *before beginning* the sentence imposed for the possession of a deadly weapon during such felony. (Emphasis added).

Section 1447(b) provides:
Any sentence imposed for a violation of this section shall not be subject to suspension and no person convicted for a violation of this section shall be eligible for parole or probation during the period of the sentence imposed.

2. A notation was made on Burgan's Departmental records that his return was "based on a sentence recalculation" and "is not for any rule infraction nor should it be viewed in a negative manner."

credits, which are secured under separate statutory standards. In view of the fact that the original regulation had remained in effect for fourteen years without legislative reaction, the practical and plausible administrative interpretation was acceptable as indicative of legislative intent.

In addition to upholding the reasonableness of the original regulation, the Superior Court ruled that a retroactive application of the addendum to Burgan's sentence would violate the *ex post facto* clause, U.S. Const. Art. I, § 10. The promulgation and effect of the addendum were unforeseeable to Burgan because he had pled guilty in reliance on representations of the prosecutor, his defense counsel and the judge taking his guilty plea that the first five years of his combined sentence would be mandatory thus making him eligible for parole thereafter.

## II

On appeal, the Department contends that the Superior Court's construction of section 1447 is fundamentally flawed in viewing the statute as ambiguous when its literal meaning is clear and compelling. The 1990 addendum, it argues, was prompted by the decision of this Court in *Zimmerman v. State*, Del.Supr., 565 A.2d 887 (1989) which led, in turn, to the Attorney General's advisory opinion requiring modification of the regulation to reflect legislative intent. The Department also disputes the Superior Court's *ex post facto* determination on the ground that Burgan could not reasonably rely upon an erroneous interpretation of an administrative ruling clearly at variance with statutory law.

■ The decision of the Superior Court essentially turns on the construction of statutory law as well as the constitutional implication of conflicting interpretations. Our review of such questions of law is *de novo*. *City of Wilmington v. Parcel of Land*, Del.Supr., 607 A.2d 1163 at 1166 (1992).

■ The parties are in agreement that the legislative purpose for the enactment of section 1447(c), which became law in 1976, was to preclude the imposition of concurrent sentences which was an option available to sentencing judges at the time. This intent was satisfied by the first sentence of the statute but, as the Superior Court noted, the language concerning the underlying offense being "served" prior to the weapons offense "was probably added to foreclose any possible question whether the general prohibition in the first sentence ... was intended to apply specifically to the sentence for the underlying felony as well." *Burgan v. Watson*, Del.Super., C.A. No. 91M–06–16, Balick, J., slip op. at 7 (March 17, 1992).

While section 1447 reflects a legislative intent to preclude concurrent service of sentencing for underlying felonies and related weapons offenses, and to that extent the meaning of the statute is unmistakable, the statute takes on a certain ambiguity when applied to a prisoner's parole and good time credit entitlement, both of which are secured by separate statutes. Thus, under 11 *Del.C.* § 4346(a), a person "may be released on parole by the Board if he has *served* one-third of the *term* imposed by the court, such *term* to be reduced by such merit and good behavior credits as have been earned, or 120 days, whichever is greater." (emphasis added) The prospective parole eligibility date is subject to the further condition that "good time" credits may be forfeited by conviction of a crime or of violation of Department rules "during the term of his sentence." 11 *Del.C.* § 4382(a) and (b). Similarly, good time credits, once earned, shorten the "term or terms of incarceration." 11 *Del.C.* § 4348. Although the entitlement to such credits is implicitly denied to prisoners serving minimum mandatory sentences, *Richmond v. State*, Del.Supr., 446 A.2d 1091 (1982), they serve to reduce a non-mandatory portion of the term of incarceration.

■ Despite the clear language of section 1447, its application to both the parole process and the accrued good time credits, separately established by statute, created an obvious conflict. The use of the word "term" in sections 4346(a), 4348, and

4382(a) conveyed a measuring concept for parole and good time credit purposes which does not require the serving of consecutive sentences in any particular order. The Department resolved this conflict through an administrative regulation which preserved the parole process while at the same time assuring that mandatory minimum sentences would be served in full. As the Superior Court noted, the original regulation adopted by the Department remained in effect for fourteen years without interference by the General Assembly. Such inaction may well constitute acquiescence and be indicative of legislative intent. *See Council 81, Am. F. of S. C & M Employees v. State Department of Finance,* Del. Supr., 293 A.2d 567 (1972); *cf. State v. Lillard,* Del.Supr., 531 A.2d 613 (1987). More importantly, the Department's parole eligibility regulation was implicitly adopted by prosecutors, defense lawyers and judges throughout the State in the negotiation of guilty pleas. Indeed, at the time Burgan entered his guilty pleas in 1982 both the prosecutor and Burgan's lawyer shared a common understanding that his sentence for the weapons offense would be "front ended" for parole purposes. The Superior Court judge who accepted his plea confirmed that understanding in explaining to Burgan the sentence he faced.[3]

■ The Department argues that section 1447(c) is emphatic in its requirement that a sentence for a weapons offense must be served prior to the sentence for the underlying felony and we need to look no further to resolve the conflict between the original regulation and the addendum. However, section 1447(c) must not be construed in isolation but must be read *in pari materia* with related statutes directed to other aspects of sentencing such as parole eligibility and good time credits. *State Farm Mut. Auto. Ins. Co. v. Wagamon,* Del. Supr. 541 A.2d 557, 560 (1988). In attempting to reconcile inconsistencies between the several statutes "literal or perceived interpretations which yield mischievous or absurd results are to be avoided." *Spielberg v. State,* Del.Supr., 558 A.2d 291, 293 (1989); *see also Daniels v. State,* Del. Supr., 538 A.2d 1104, 1110 (1988).

■ The Department's original regulation not only preserved the parole process but served to advance one goal of parole— a staged transition from confinement to release. If, as the addendum requires, the prisoner must serve his non-mandatory sentence first (during which time he acquires good time credits) his release from that sentence through parole merely transfers him to a mandatory term of imprisonment to which no parole eligibility or good time credit attaches. Such a process is not only illogical, it defeats the goal of release to the community through the gradual process of reduced levels of confinement as a transition to ultimate release. Release on parole is intended to substitute a separate form of discipline for prison discipline. *Spurlin v. Department of Corrections,* Del.Supr., 230 A.2d 276 (1967).

■ The Department argues that under the addendum a prisoner may be paroled to another sentence, *i.e.,* paroled from his sentence for the underlying felony to serve his mandatory sentence. While such a procedure is theoretically possible, it is at variance with the language of 11 *Del.C.* § 4347(c) which contemplates the release of a prisoner when "in the opinion of the Board there is a reasonable probability that the person can be released without detriment to the community or to himself and, where, in the Board's opinion, *parole supervision would be in the best interest of society and as aid to rehabilitation of the offender as a law abiding citizen.*" (emphasis added) We fail to understand how the beneficial effect of parole supervision can occur through a prisoner's parole to a

3.

      *    *    *    *    *    *

    THE COURT: This is a lengthy imprisonment, however, ten years, when you recognize that the first five years are mandatory and there would be no chance of probation, parole or time off for good behavior during the first five years of that ten-year imprisonment, and you must also bear in mind that although the State is going to recommend no more than ten years imprisonment, you could get up to as much as 60 years imprisonment.

    Do you understand the Plea Agreement?

    MR. BURGAN; Yes, sir.

mandatory sentence of imprisonment. Such an arrangement is inconsistent with the basic goal of parole.

The rationale underlying the original regulation, which views service of mandatory sentences as accruing before non-mandatory sentences, is reflected in the Truth In Sentencing Act, enacted by the General Assembly in 1989. Although parole was abolished, the Act recognizes the need for transition from non-mandatory sentences to decreased levels of security and ultimate release. Indeed, 11 *Del.C.* § 4216(b) requires the interruption of a non-mandatory sentence for service of a subsequently imposed mandatory sentence, with resumption of the non-mandatory sentence prior to release.

The Department argues that the 1990 addendum adopted upon the advice of the Attorney General was prompted by the decision of the Court in *Zimmerman v. State*, Del.Supr., 565 A.2d 887 (1989). In our view, however, the Department reads too much into the reference in *Zimmerman* concerning section 1447(c). *Zimmerman* involved an appeal by a defendant following convictions of arson and a related weapons offense. This Court affirmed the convictions and, although the State did not appeal the sentencing order, directed that defendant be resentenced to serve the underlying felony prior to serving the sentence for the weapons offense as section 1447(c) requires. In *Zimmerman*, this Court did not address, nor intended to comment on, the relationship between section 1447(c) and parole eligibility. That issue was not remotely related to the defendant's claims before the Court and, in the absence of a cross appeal by the State, this Court would not, as a matter of orderly appellate procedure, entertain claims of error asserted by the State. Our oblique reference to section 1447(c) was intended to correct an obvious sentencing error on the face of the record. It was not intended to be the impetus for the Attorney General to overturn a long-accepted administrative interpretation of parole eligibility. If, as the Department maintains, its change of position is based on *Zimmerman's* correction of a plain sen-

tencing error it can hardly be said to have been done at judicial direction.

In sum, we hold that the Department's original regulation for computing parole eligibility is not controlled by the literal language of section 1447(c) but by the legislative purpose underlying those statutes defining the standards for parole calculation and good time credits. Our decision in *Zimmerman v. State* neither directed nor authorized the modification of the original regulation through the adoption of the 1990 addendum. We thus affirm the decision of the Superior Court which directed the Department to compute Burgan's parole eligibility and conditional release under the original regulation. It is clear that when the statutes are read *in pari materia* the conflict between the literal terms of section 1447(c) and the apparent intent reflected in the statutory scheme for parole was properly resolved by the original regulation. Any change in this longstanding administrative practice should come from the General Assembly, if it be so inclined. *See, e.g., Lillard*, 531 A.2d at 619.

Although the Superior Court ruled that Burgan was entitled to have his parole eligibility determined under the original regulation, the Department filed a motion for reargument requesting the Court to decide the question of whether the 1990 addendum was unconstitutional on *ex post facto* grounds. In the interest of providing a full appellate record the Superior Court agreed to decide that question and ruled that the addendum was unforeseeable by the defendant and, since it clearly increased the severity of his sentence, violated the *ex post facto* clause.

Although the parties have briefed and argued the *ex post facto* question it is not necessary for us to decide that issue and we decline to do so. This is not a class action and Burgan does not purport to be a class representative. Our affirmance of the Superior Court's interpretation of the interplay between section 1447(c) and the statutory scheme for parole and conditional release results in complete relief for Burgan. To the extent that other petitioners, not before the Court, are entitled to the

benefit of the original regulation, our present holding provides sufficient precedent and guidance to the Department.

The judgment of the Superior Court is AFFIRMED.