# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JUSTIN BOWIE, | § | |
| | § | |
| Defendant Below, | § | No. 340, 2022 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2003005778 (N) |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: July 26, 2023
Decided: October 17, 2023

Before **SEITZ**, Chief Justice; **TRAYNOR** and **GRIFFITHS**, Justices.

## <u>ORDER</u>

This 17th day of October 2023, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    On March 10, 2020, Justin Bowie and a companion were driving southbound on I-95 near Marsh Road at approximately 1:15 a.m.  Delaware State Police Corporal Andrew Pietlock observed Bowie driving 20 miles over the posted speed limit.  Corporal Pietlock followed Bowie for a few miles and then engaged his emergency lights.  Bowie took an exceedingly long time to pull over his vehicle.

(2)    As Corporal Pietlock approached Bowie's vehicle he noticed the smell of alcohol emanating from the car.  While speaking with the occupants of the vehicle, Corporal Pietlock saw that Bowie had glassy and bloodshot eyes.  Corporal Pietlock

asked Bowie and his passenger if they had been drinking. Bowie admitted to drinking. Corporal Pietlock then asked Bowie to get out of his car and walk to the rear of the vehicle. Bowie made his way to the rear of the vehicle without incident.

(3) At the rear of the vehicle, Corporal Pietlock engaged Bowie in conversation. During the conversation, the officer noticed the smell of alcohol on Bowie's breath. Bowie also mumbled something Corporal Pietlock could not understand. He then asked Bowie to participate in field sobriety tests. Bowie refused. Bowie cited safety issues with performing the tests roadside. Corporal Pietlock then arrested Bowie for suspicion of driving under the influence and transported him to Delaware State Police Troop 1.

(4) At the Troop, Corporal Pietlock prepared and obtained a search warrant to draw a sample of Bowie's blood. The warrant contained the details leading to Bowie's arrest, as well as information that Corporal Pietlock learned after the arrest, including the fact that Bowie had two prior convictions for alcohol-related traffic offenses.

(5) A phlebotomist drew Bowie's blood at 3:33 a.m. Corporal Pietlock witnessed the phlebotomist invert a test tube—containing a preservative powder, an anticoagulant powder and Bowie's blood—at least once to mix the substances together. The sample was transported to the Delaware State Police Crime Lab where it was tested by Julie Willey, the lab's director. The results showed that Bowie's

blood alcohol concentration was 0.16. As a result, Bowie was charged with driving under the influence of alcohol.

(6) In November 2021, Bowie moved to suppress the evidence from his arrest and blood draw. In January 2022, Bowie amended his motion to suppress. The Superior Court denied the motion and subsequently denied a motion for reargument in April 2022. The case proceeded to trial.

(7) At trial, Willey testified about the State's blood draw protocol. Willey testified that when she first started working at the lab, the operative protocol required that the test tube be slowly and completely inverted at least five times. She explained that this protocol was authored before computers were in widespread use and that there was no documentation or proof that tubes were being inverted five times. When she became the director of the lab in 2014, Willey revised the protocol to the following: "immediately after blood collection, assure proper mixing of anticoagulant/preservative powder [by] slowly and complete[ly] inverting the blood tube."[1] She noted that other law enforcement agencies used a similar protocol.

(8) At the end of the state's case-in-chief, Bowie moved for a judgment of acquittal under Superior Court Criminal Rule 29. The court denied the motion. At the end of trial, the court did not provide the jury with an expert witness jury instruction pertaining to Willey but did provide a general witness credibility

[1] App. to Opening Br. at A59.

3

instruction. Neither party raised an objection. During deliberations, the jury sent the trial judge the following note: "the State is required to establish the proper protocols. Do we have to determine whether the State protocols were proper? Or just that the State protocols were followed?"[2] The trial judge responded that "[y]ou are to determine whether the State protocols were followed."[3]

(9) The jury found Bowie guilty of driving under the influence of alcohol. On May 9, 2022, Bowie filed another motion for judgment of acquittal, which he later amended and expanded to include, in the alternative, a motion for a new trial.[4] The Superior Court denied the motions in September 2022.[5] This appeal followed.

(10) Bowie raises four issues on appeal: (1) whether the Superior Court abused its discretion in denying his motions to suppress on the grounds that his arrest for DUI and the search warrant for his blood were supported by probable cause; (2) whether the Superior Court erred in denying his motion for judgment of acquittal; (3) whether the Superior Court committed plain error by failing to provide the jury with an expert witness jury instruction; and (4) whether the Superior Court erred in

---

[2] *State v. Bowie*, 2022 WL 4004005, at *1 (Del. Super. Sept. 1, 2022); *see also* App. to Opening Br. at A72.

[3] *Id.*

[4] Bowie filed the motion to amend and expand his previously filed motion seeking a judgment of acquittal on July 12, 2022. On August 2, 2022, he filed a motion seeking, in the alternative, a dismissal of the State's case. *See* App. to Opening Br. at A7.

[5] Below, we address only Bowie's first motion for judgment of acquittal, as his subsequent motions for judgment of acquittal or, in the alternative, for a new trial were untimely. The Superior Court appropriately denied them on this ground. *See Bowie*, 2022 WL 4004005, at *2.

providing the supplemental jury instruction that the jury should determine only whether the State's revised blood draw protocol was followed.

(11) First, the Superior Court did not abuse its discretion in denying Bowie's motions to suppress the evidence from his arrest because there was probable cause to arrest him for driving under the influence of alcohol or drugs.[6] Probable cause to arrest for a DUI offense exists when an officer possesses "information which would warrant a reasonable [person] in believing that a crime ha[s] been committed."[7] Corporal Pietlock observed indicia of impairment—including speeding, failing to pull over, bloodshot and glassy eyes, an admission of drinking coupled with a smell of alcohol emanating from Bowie and the vehicle, mumbled speech, and a refusal to perform field sobriety tests—that, under the totality of the circumstances, provided him with probable cause to arrest Bowie for DUI.[8]

---

[6] The Court reviews a trial court's denial of a motion to suppress after an evidentiary hearing for abuse of discretion. *Rivera v. State*, 7 A3d 961, 966 (Del. 2010). Factual findings are reviewed "for whether the trial judge abused his or her discretion in determining whether sufficient evidence supported the findings and whether those findings were clearly erroneous." *Miller v. State*, 4 A.3d 371, 373 (Del. 2010).

[7] *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011). Police must present facts "which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability" that the defendant has committed a DUI offense. *Id.* at 292–93. Where the underlying facts are not in dispute, a finding of probable cause to arrest for a DUI offense "constitutes a legal determination that is subject to *de novo* review." *Rybicki v. State*, 119 A.3d 663, 670 (Del. 2015) (citations omitted). "In the specific context of DUI arrests, probable cause is generally based on the arresting officer's observations of the arrestee, which may include field sobriety tests." *Id.* at 671.

[8] *See, e.g.*, *Bease v. State*, 884 A.2d 495, 499–500 (Del. 2005) (holding that evidence of a traffic violation, odor of alcohol, rapid speech, admission to drinking, bloodshot and glassy eyes, and a failed alphabet test constituted probable cause to arrest the driver for a DUI offense); *see also Rybicki v. State*, 119 A.3d at 671 (observing that refusal to submit to field sobriety tests, breath

5

(12) Similarly, the Superior Court did not abuse its discretion in denying Bowie's motions to suppress the evidence obtained from his blood sample because there was probable cause to draw his blood.[9] In determining whether probable cause exists, the judicial officer must likewise apply a totality of the circumstances test "to decide if there is a fair probability that contraband or evidence of a crime will be found in a particular place."[10] Given the above facts, under the totality of the circumstances, the Superior Court did not err in finding that probable cause existed to issue the search warrant. Bowie's arguments to the contrary are unavailing. First, Bowie contends that the search warrant affidavit required foundational evidence of Corporal Pietlock's law enforcement training and experience and that its omission precluded the magistrate from weighing the credibility of his observations and

---

tests, or other types of testing in the field are other indicia of impairment that can lend to a finding of probable cause under the totality of the circumstances).

[9] Under both the United States Constitution and the Delaware Constitution, a search warrant may issue only upon the showing of probable cause. *LeGrande v. State*, 947 A.2d 1103, 1107–08 (Del. 2008) (internal citations omitted). "An affidavit in support of a search warrant must, within the four-corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place." *Rivera v. State*, 7 A.3d at 966 (internal quotations and citations omitted). "Where the facts are not disputed and only a constitutional claim of probable cause is at issue, we will review the Superior Court's application of the law of probable cause *de novo*." *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) (citations omitted).

[10] *Rivera v. State*, 7 A.3d at 966–967 (internal quotations and citation omitted); *see also Rybicki v. State*, at 668–69; *Lambert v. State*, 110 A.3d 1253, 1255 (Del. 2015). The judicial officer may draw reasonable inferences from the affidavit's factual allegations. *Id.* at 967. We are to accord a magistrate's determination of probable cause great deference, and our role is to "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Sisson*, 903 A.2d at 296 (citations omitted). That said, it is not our job to "rubber stamp" a judicial officer's determination. *Id.* (citations omitted).

6

conclusions. This is without merit because evidence of an officer's training can be inferred.[11] Second, Bowie argues that Corporal Pietlock inappropriately included two previous convictions for alcohol-related traffic offenses when seeking the warrant and that he did so to increase the probability of obtaining the warrant.[12] On this point, the trial court agreed with Bowie that his prior convictions cannot be used to establish the "substantial basis" of the search warrant.[13] We too agree, but conclude that even apart from Bowie's prior convictions, Corporal Pietlock observed sufficient indicia of impairment to support the magistrate's finding of probable cause to obtain a warrant for Bowie's blood.

(13) Second, the Superior Court did not err in denying Bowie's initial motion for judgment of acquittal, which he made at trial after the State closed its case-in-chief.[14] On appeal from the denial of a motion for judgment of acquittal, we decide *de novo* "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt

---

[11] *See Rivera v. State*, 7 A.3d at 967 ("[T]he magistrate may draw reasonable inferences from the affidavit's factual allegations.").

[12] To the extent this was error, it was harmless, and did not render the warrant fatally defective.

[13] *See* App. to Opening Br. at A12–13.

[14] As noted above, the Superior Court properly denied Bowie's subsequent motions for judgment of acquittal, or in the alternative, for a new trial due to their untimeliness. *See Bowie*, 2022 WL 4004005, at *2. Under Superior Court Criminal Rule 45(b), the trial court may not extend the time for any action under Criminal Rules 29 and 33, unless they allow for certain extensions of time, none of which are applicable here. *Id.* Accordingly, we need only address Bowie's initial motion for judgment of acquittal on its merits.

of all of the elements of the crime."[15] Bowie contends that due to the "profound unreliability of the [blood] collection protocol," there was insufficient evidence to support a finding that his blood alcohol content was .08 or more within four hours of driving.[16] We find that Bowie waived this argument. At no point before or during trial did Bowie object to Willey's testimony or his blood draw results on the grounds that they were unreliable.[17] And in viewing the evidence in the light most favorable to the State, we find that the State presented sufficient evidence that would allow the jury to find Bowie guilty beyond a reasonable doubt of all of the elements of driving under the influence of alcohol, including that his blood alcohol content was .08 or more within four hours of driving.

(14) Third, the Superior Court's failure to provide the jury with an expert witness jury instruction does not constitute plain error.[18] It is a general rule that a

---

[15] *Cline v. State*, 720 A.2d 891, 892 (Del. 1998) (footnote omitted). Here, to convict Bowie of driving under the influence, the State was charged with proving beyond a reasonable doubt that: (1) Bowie was driving; and (2) "his alcohol concentration was, within four hours after the time of driving .08 or more—the registered alcohol concentration resulted from an amount of alcohol present in, or consumed by [Bowie] when he was driving." *Selby v. State*, 2019 WL 3454087, at *3 (Del. Super. July 31, 2019).

[16] App. to Opening Br. at 14.

[17] *See, e.g.*, *Davis v. State*, 625 A.2d 278 (Del. 1993) ("The failure to object at trial constitutes a waiver of the right to raise the issue on appeal unless the error is plain.").

[18] *See Dougherty v. State*, 21 A.3d 1, 3 (Del. 2011). "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Id.* (internal quotations and citations omitted). "Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." *Id.* (internal quotations and citations omitted).

8

party "should submit specific written requests for jury instructions in order to present its contentions to the trial court and preserve these contentions for a possible appeal."[19] Here, the record shows, and Bowie concedes, that the inadvertent omission by the trial court went unnoticed by the parties and Bowie did not object to the omission. Accordingly, we find that this issue was not preserved for appeal, and we therefore review the Superior Court's failure to provide the instruction for plain error.[20]

(15) The trial court's failure to give this specific instruction did not amount to plain error. For example, in *Lonergan v. State*, this Court found that the trial court's failure to provide an expert witness instruction as to the testimony of a police officer did not result in plain error because his testimony was within the scope and understanding of an average juror, and the general credibility instruction that the trial court gave the jury informed it of the weight to afford the officer's testimony.[21]

(16) Bowie argues that the failure to include an expert witness instruction resulted in jury confusion; namely, that the note the jury sent to the trial judge was

---

[19] *Zimmerman v. State*, 565 A.2d 887, 890 (Del. 1989).

[20] We may excuse a party's waiver if we find "that the trial court committed plain error requiring review in the interests of justice." *See* Supr. Ct. Rule 8; *see also Monroe v. State*, 652 A.2d 560, 563 (Del. 1995); *see also Dougherty v. State*, 21 A.3d 1, 6–7 (Del. 2011) (reviewing for plain error when appellant did not request a specific jury instruction at trial); *Watson v. State*, 2023 WL 5030026, at *5 (Del. Aug. 8, 2023) (citation and internal quotations omitted) ("Here, because Watson failed to object to the alleged misconduct at trial, we review only for plain error.").

[21] 590 A.2d 502 (Del. 1991).

9

evidence that they were confused about "what role they were to play" in evaluating Willey's testimony.[22] We disagree. The Superior Court gave the jury a general witness credibility instruction, allowing them to give appropriate weight to Willey's testimony. In other words, because the jury had a sufficient understanding of its role, we find that the failure to give a specific expert witness instruction, if it were to amount to error, would be harmless.

(17) Fourth, the Superior Court did not err in providing a supplemental instruction to the jury that it should determine whether the State's current blood draw protocol was followed. On appeal, we review a challenged jury instruction to determine "whether the instruction correctly stated the law, and enabled the jury to perform its duty."[23] We review "*de novo* a refusal to instruct on a defense theory (in any form)" and we review "a refusal to give a 'particular' instruction (that is, an instruction is given but not with the exact form, content or language requested) for an abuse of discretion."[24] Bowie argues that the jury should have been instructed to determine whether the protocol was both valid and followed, not just whether it was followed. Had the trial court instructed the jury in the way in which Bowie

---

[22] Opening Br. at 34; Reply Br. at 25.

[23] *Brown v. State*, 49 A.3d 1158, 1160 (Del. 2012) (internal quotations and citation omitted); *see also Bullock v. State*, 775 A.2d 1043, 1047 (Del. 2001) (internal quotations and citation omitted) ("While some inaccuracies and inaptness are to be expected in any charge, this Court will reverse if the alleged deficiency in the jury instructions undermined . . . the jury's ability to intelligently perform its duty in returning a verdict.").

[24] *Wright v. State*, 953 A.2d 144, 148 (Del. 2008).

10

wanted, it would have amounted to instructing the jury about the defense's legal theory of the case. And as the State points out, Bowie did not file a pretrial motion *in limine* to exclude Willey's expert testimony or the blood test results on the basis of the blood draw protocol's reliability, nor did he object to her testimony or the blood sample results at trial.[25] Accordingly, we find that the instruction was not a misstatement of law and that the court's supplemental instruction allowed the jury to perform its duty in reaching a verdict that Bowie was driving under the influence of alcohol.

NOW, THEREFORE IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[25] Answering Br. at 45.

11