William J. LeCOMPTE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: June 30, 1986.
Decided: Oct. 21, 1986.
Rehearing Denied Oct. 30, 1986.

Nancy Jane Mullen (argued) and Edward C. Pankowski, Jr., Public Defender's Office, Wilmington, for defendant below, appellant.

Richard E. Fairbanks, Jr., Atty. Gen.'s Office, Wilmington, for plaintiff below, appellee.

Before CHRISTIE, C.J., McNEILLY, HORSEY, MOORE and WALSH, JJ., constituting the Court En Banc.

MOORE, Justice, for the majority.

William LeCompte appeals a sentence of the Superior Court requiring him to serve consecutive three-year prison terms on the charges of Robbery First Degree and Possession of a Deadly Weapon During the Commission of a Felony. The defendant contends that the imposition of consecutive sentences for these two crimes is not permitted by this Court's decision in *Davis v. State*, Del.Supr., 400 A.2d 292 (1979), the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), and related decisions. In our opinion the matter is controlled by the clearly expressed legislative intent of the General Assembly in providing for enhanced punishment where persons possess a deadly weapon during the commission of a felony. Consistent with the analyses and guidance furnished by *Albernaz, Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) and *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), such sentences are permissible, and given our unambiguous legislation on the subject, are mandatory. Accordingly, we affirm, and thus overrule *Davis*.

## I.

On the night of September 20, 1984, wearing a stocking mask over his face, William LeCompte entered a fast food restaurant in Wilmington and threatened assistant manager Terrence Bordley with a knife. Despite the mask, Bordley and another employee then in the restaurant recognized LeCompte, who had previously worked there. LeCompte held the knife to Bordley's throat and took money from the restaurant's cash drawer.

LeCompte was arrested a short time later and subsequently was indicted on charges of Robbery First Degree, in violation of 11 *Del.C.* § 832(a)(2),[1] and Possession of a Deadly Weapon During the Commission of a Felony, in violation of 11 *Del.C.* § 1447.[2] He was convicted on both charges. On the robbery count, the defendant was sentenced to a three year mandatory minimum term, not subject to probation, suspension, or parole. As to the weapons charge, he received another three year mandatory minimum term, also not subject to probation, suspension, or parole, to run consecutively after the robbery sentence.

LeCompte then filed this appeal. The State moved to affirm pursuant to Supreme Court Rule 25(a), and this Court granted the State's motion. LeCompte filed a timely motion for reargument pursuant to Supreme Court Rule 18, urging for the first time the application of *Davis v. State* to the case at bar. We granted the motion for reargument in order to consider *en banc* the continuing validity of *Davis,* and now again affirm the decision below, thereby overruling *Davis.*

## II.

Robbery in the first degree is an offense involving physical injury to a non-participant in the crime, or in which the perpetrator displays what appears to be a deadly

1. The relevant provision of the statute provides:
   § 832. Robbery in the first degree.
   (a) A person is guilty of robbery in the first degree when he commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
   (1) Causes physical injury to any person who is not a participant in the crime; or
   (2) Displays what appears to be a deadly weapon; or
   (3) Is armed with and uses or threatens the use of a dangerous instrument.
   Robbery in the first degree is a class B felony.
   (b) Notwithstanding §§ 4205(b)(2) and 4215 of this title, a person convicted a second or subsequent time for robbery in the first degree shall be sentenced to a term of imprisonment for not less than 10 nor more than 30 years and the court shall not suspend the sentence of such person, nor give such person a probationary sentence, nor shall the term of imprisonment imposed under this section run concurrently with any other term of imprisonment imposed for the commission of such offense.
   (c) The minimum sentence of imprisonment required by this section and § 4205 of this title for a first offense shall not be subject to suspension, and no person convicted under this section shall be eligible for probation or parole during the first 3 years of such sentence.
   \*   \*   \*   \*   \*   \*
   11 *Del.C.* § 832(a)–(c).

2. The relevant provision of the statute provides:
   § 1447. Possession of a deadly weapon during commission of a felony; class B felony.
   (a) A person who is in possession of a deadly weapon during the commission of a felony is guilty of possession of a deadly weapon during commission of a felony.
   Possession of a deadly weapon during commission of a felony is a class B felony.
   (b) Any sentence imposed for a violation of this section shall not be subject to suspension and no person convicted for a violation of this section shall be eligible for parole or probation during the period of the sentence imposed.
   (c) Any sentence imposed upon conviction for possession of a deadly weapon during the commission of a felony shall not run concurrently with any other sentence. In any instance where a person is convicted of a felony, together with a conviction for the possession of a deadly weapon during the commission of such felony, such person shall serve the sentence for the felony itself before beginning the sentence imposed for possession of a deadly weapon during such felony.
   \*   \*   \*   \*   \*   \*
   11 *Del.C.* § 1447(a)–(c).

weapon or is armed with and uses or threatens the use of a dangerous instrument. As a class B felony, robbery in the first degree carries with it a mandatory minimum three year sentence without benefit of probation, suspension, or parole. 11 *Del.C.* § 832.

Possession of a deadly weapon during the commission of a felony is a separate crime, and likewise a class B felony with the same mandatory minimum sentence. 11 *Del.C.* § 1447. The sentence for weapons possession is to run consecutively to the sentence for the accompanying felony, as Section 1447 explicitly states:

> (c) Any sentence imposed upon conviction for possession of a deadly weapon during the commission of a felony shall not run concurrently with any other sentence. In any instance where a person is convicted of a felony, together with a conviction for the possession of a deadly weapon during the commission of such felony, such person shall serve the sentence for the felony itself before beginning the sentence imposed for possession of a deadly weapon during such felony.

11 *Del.C.* § 1447(c).

Under 11 *Del.C.* § 203, there is no rule of strict construction governing the State's criminal statutes. Instead criminal statutes are to be construed according to the fair import of their terms to promote justice and effect the purposes of the law as stated in 11 *Del.C.* § 201.[3] Giving effect to that mandate, it is clear that 11 *Del.C.* § 1447 requires the imposition of consecutive sentences upon convictions of a weapons charge and a related felony.

## III.

■ When cumulative sentences are imposed in a single trial, the Double Jeopardy Clause operates to prevent the sentencing court from meting out a greater punishment than that intended by the legislature. *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

Where two distinct statutory provisions proscribe the same conduct, the traditional rule of statutory construction used to determine whether there are two offenses or one offense is "whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). This principle is likewise generally applied to cumulative sentencing so that multiple punishments are not imposed for two offenses arising out of the same occurrence unless each offense requires proof of a fact which the other does not. *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980).

The assumption underlying the rule in *Whalen* is that Congress ordinarily does not intend to punish the same offense under two different statutes. However, that rule of construction gives way in the face of clear legislative intent to the contrary: "Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Id.* at 692, 100 S.Ct. at 1438. The Court later focused on the requirement of legislative

---

3. The relevant provision of the statute provides:
§ 201. General purposes.
The general purposes of this Criminal Code are:
(1) To proscribe conduct which unjustifiably and inexcusably causes or threatens harm to individual or public interests;
(2) To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction;
(3) To define the act or omission and the accompanying mental state which constitute each offense;
(4) To differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor; and
(5) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection.
11 *Del.C.* § 201.

intent to impose cumulative punishments: "And where the offenses are the same under [the *Blockburger*] test, cumulative sentences are not permitted, unless elsewhere specially authorized by Congress." *Id.* at 693, 100 S.Ct. at 1438.

In *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the United States Supreme Court subsequently cast in affirmative terms the rule regarding cumulative sentencing: "The *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Id.* at 340, 101 S.Ct. at 1143. Where the intent of the legislature is clear, multiple punishments are not constitutionally barred. "Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* at 344, 101 S.Ct. at 1145 (footnote omitted).

Following *Albernaz,* this Court twice addressed the issue of cumulative punishment in connection with the weapons statute and a related felony. *See Hunter v. State,* Del.Supr., 420 A.2d 119 (1980), *vacated and remanded,* 450 U.S. 991, 101 S.Ct. 1689, 68 L.Ed.2d 190 (1981), *rev'd on remand,* Del. Supr., 430 A.2d 476 (1981), *cert. denied,* 454 U.S. 971, 102 S.Ct. 519, 1570 L.Ed.2d 390 (1981); *Evans v. State,* Del.Supr., 420 A.2d 1186 (1980), *vacated and remanded,* 450 U.S. 991, 101 S.Ct. 1689, 68 L.Ed.2d 190 (1981), *rev'd on remand,* Del.Supr., 430 A.2d 481 (1981), *cert. denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981). In both cases, the court had originally ruled, on constitutional grounds, that cumulative punishment under the weapons statute and an underlying felony was impermissible. The United States Supreme Court vacated the decisions and remanded them for fur-

ther consideration in light of *Albernaz.* On remand, the court in *Hunter* upheld cumulative sentences for convictions on a charge of first degree assault, 11 *Del.C.* § 613(1), and an accompanying weapons offense:

Applying the rule of *Albernaz* to the instant case, we now hold that where the General Assembly intended, as we have found that it did in § 613(1) and § 1447, to impose multiple punishments for two offenses not satisfying the *Blockburger* test, imposition of two consecutive sentences by a court as a result of a single criminal trial does not violate the Double Jeopardy Clause of the Fifth Amendment.

*Hunter,* 430 A.2d at 481.

The Court reached a similar conclusion on remand in *Evans* regarding the weapons statute and both second degree assault, 11 *Del.C.* § 612, and manslaughter, 11 *Del.C.* § 632. *Evans,* 430 A.2d at 482.

In *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the United States Supreme Court synthesized its analyses of *Blockburger, Whalen,* and *Albernaz* to affirm cumulative sentences for a defendant convicted under both Missouri's armed robbery and weapons offense statutes:

Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent.... Here, the Missouri Legislature has made its intent crystal clear. Legislatures, not courts, prescribe the scope of punishments.

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether

those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368–69, 103 S.Ct. at 679 (footnote omitted).

## IV.

█ Thus, the clearly expressed intent of the General Assembly determines the outcome here. We find, from the unambiguous language of the weapons statute, and the different problems addressed by Sections 832 and 1447, that the legislature clearly intended the sentence for the weapons offense to run consecutively to the sentence for first degree robbery.

Primarily, we look to the language of the weapons statute itself. Section 1447 specifically states that a defendant convicted of possessing a deadly weapon during the commission of a felony "shall serve the sentence for the felony itself before beginning the sentence imposed for possession of a deadly weapon during such felony." 11 *Del.C.* § 1447(c). The statutory mandate of consecutive sentences could not be clearer, especially in light of the instructive language of *Missouri v. Hunter:* "Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct ... a court's task of statutory construction is at an end ..." *Missouri v. Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679.

Moreover, each statute addresses a different specific problem. This Court has consistently held that a weapons offense is a separate crime under Delaware law. *Mackie v. State*, Del.Supr., 384 A.2d 625 (1978); *Dobrolenski v. State*, Del.Supr., 328 A.2d 447 (1974); *State v. Honie*, Del. Supr., 310 A.2d 872 (1973). The purpose of the weapons statute is to "prevent a 'nonviolent' felony from becoming a violent one." *Mack v. State*, Del.Supr., 312 A.2d 319, 321 (1973). The statute was designed to "discourage the *accessibility* of a deadly weapon during the commission of a crime, thus reducing the probability of serious harm to the victim." *Id.* at 322 (emphasis in original).

In contrast, the robbery first degree statute has a different focus. In *State v. Smallwood*, Del.Supr., 346 A.2d 164 (1975), the Court ruled that the requisite "display" of what appeared to be a deadly weapon, sufficient to elevate the crime to first degree robbery, included not only exhibitions of the weapon (or what appeared to be a weapon) to the victim, but also that which was manifested to any of the victim's senses. *Id.* at 167. Such a breadth of interpretation was based on the statutory language:

As we read the statute, the law now considers what takes place from the victim's point of view. Thus, there may be a conviction of robbery in the first degree if a defendant "displays" what "appears" to be a deadly weapon. Legislative use of the quoted words is significant because they clearly imply an inquiry into the victim's reaction and not into whether an assailant was in fact armed.

*Id.* at 166.

Initially, we note that the statutes work to prevent distinct evils. The weapons law is designed to deter the possession of a deadly weapon during a felony, and thus obviate the enhanced danger thereby posed to a victim. *See Mack v. State*, 312 A.2d at 321–22. The mere possession of a weapon during commission of a felony, whether or not it is used to facilitate the crime, creates an additional danger to the primary victim and to society at large. It is this additional danger which the legislature has singled out for particular deterrence and enhanced punishment.

On the other hand, the first degree robbery statute is aimed at those particularly serious robberies in which there is actual physical injury to a non-participant, the display of what appears to be a deadly weap-

on, or a defendant who is armed with and uses or threatens to use a dangerous instrument. *See* 11 *Del.C.* § 832(a).

However, in *Davis* this Court ruled that the elements of first degree robbery were the same as those in the weapons statute, and that the "purpose of the first-degree robbery statute is obvious. It seeks to punish with an enhanced sentence range a person whose use of weapons makes an otherwise less dangerous crime potentially explosive.... In other words, the purpose is precisely the same as that of the weapons statute." *Davis,* 400 A.2d at 296 (citations omitted).

This conclusion is neither precise nor entirely consistent with the reasoning from our previous decision in *Smallwood.* First, by injuring a non-participant, or by displaying a false impression of a deadly weapon, one can commit first degree robbery without actually possessing a weapon. 11 *Del.C.* § 832(a)(2). *See Davis,* 400 A.2d at 298; *Smallwood,* 346 A.2d at 167. Moreover, if there are no injuries and the defendant, although carrying a weapon, does not display what appears to be a deadly weapon, or does not use or threaten to use the weapon or any dangerous instrument, the defendant may be guilty of only second degree robbery while concurrently violating the weapons statute. Admittedly, neither situation is present here, but these examples illustrate the different emphases of each statute. The weapons law focuses on the actual risk attendant to the presence of a deadly instrumentality during the commission of a felony. *See Mack,* 312 A.2d at 322. The first degree robbery statute covers the interaction between the aggravating circumstances created by the defendant's conduct and the perceptions of the victim. *See Smallwood,* 346 A.2d at 166–67. Thus, even though the statutes overlap in the sense that a defendant may be convicted of both crimes on essentially the same facts, the different focus and emphasis of each statute demonstrates a legislative intent that these two separate offenses give rise to cumulative sentencing.

Finally, this result eliminates the inconsistency heretofore involved in permitting defendants sentenced for first degree robbery to escape enhanced punishment, while defendants convicted of other felonies do not. Our decision here comports with our previous findings of legislative intent in *Hunter v. State* and *Evans v. State,* mandating cumulative sentencing. It thereby eliminates the anomaly created by *Davis v. State,* where those convicted of first degree robbery escape a cumulative sentence for a companion weapons violation, while others convicted of perhaps less serious crimes do not.

## V.

Thus, we overrule *Davis v. State,* Del. Supr., 400 A.2d 292 (1979). In *Davis,* the defendant was sentenced to consecutive terms on a robbery first degree charge and a weapons count. The defendant appealed on these grounds: first, that cumulative punishment was forbidden by the Double Jeopardy Clause; and second, that the weapons statute simply replicated the purpose and effect of the robbery first degree statute, and that by a policy of lenity then followed in relevant United States Supreme Court decisions, the defendant could not be sentenced under both the underlying felony and the weapons statute. *Id.* at 294.

Rather than conducting a *Blockburger*-style analysis under which the cumulative punishments might have been voided on constitutional grounds, the Court did not address the constitutional arguments and based its decision, prohibiting consecutive sentencing, on a construction of the robbery first degree statute. The court thus held that the legislative revision which divided the crime of robbery into first and second degrees created a first degree robbery statute which duplicated the weapons statute in design, purpose, and effect:

> ... Stripped to essentials, both proscribe the same thing: possessing (displaying) a deadly weapon during commission of a felony (second-degree robbery). It follows that, as to armed robbery, the Gen-

eral Assembly has defined two indistinguishable crimes, and that it intended to replace the weapons statute, § 1447, with the special aggravated crime of first-degree robbery, § 832.

We hold, therefore, that a defendant who is alleged to have displayed a deadly weapon during a robbery (or attempted robbery) may not be sentenced separately for first-degree robbery (or attempted first-degree robbery) and possession of a deadly weapon during the commission of the robbery ...

400 A.2d at 296–97 (citations omitted).

In considering the State's motion for reargument in *Davis,* the Court attempted to clarify the relation between *Davis* and *Smallwood.* On its motion, the State contended that the two statutes did "not cover the same ground." *Davis,* 400 A.2d at 298. The *Davis* court understood the State's contention to be that "a defendant could be convicted of robbery in the first degree only if he displayed what 'appeared' to be a deadly weapon, but not if he was in fact armed with a deadly weapon ...", and properly refused to construe the first degree robbery statute in that fashion. *Id.* The *Davis* court correctly ruled that under § 832(a)(2) and *Smallwood,* the statute covered situations in which the defendant was in fact armed as well as those in which he manifested what appeared to be a deadly weapon. The Court concluded by reasserting its main holding, that the legislative purpose behind both statutes was the same.

In retrospect, it is apparent that the analysis in *Davis* was incomplete. Although the discussion on reargument was correct insofar as the ruling that § 832 included robberies in which the defendant in fact possessed a deadly weapon, the failure of *Davis* is its lack of attention to the particular focus of each statute, and an attempt to infer a legislative intent which the plain language of the statutes refutes. Thus, to avoid overturning the sentencing scheme based on constitutional grounds then prevailing, the Court inferred an in-

tent of the legislature to reach a decision which must now be considered something of an anomaly in view of the clearly expressed and unambiguous enactments of the General Assembly. Based on such an unequivocal legislative intent, coupled with the guidance from the United States Supreme Court in *Missouri v. Hunter, Davis* can no longer stand. The judgment of the Superior Court is hereby AFFIRMED.

WALSH, Justice, with whom CHRISTIE, Chief Justice, joins, dissenting.

In *Davis v. State,* Del.Supr., 400 A.2d 292 (1979), this Court faced the same question presented here: May a defendant be separately sentenced for robbery first degree, in violation of 11 *Del.C.* Section 832(a)(2) and possession of a deadly weapon during the commission of a felony, in violation of 11 *Del.C.* Section 1447? The *Davis* Court, applying recognized principles of statutory construction, determined that question in the negative. Seven years later a majority of this Court, applying the same principles, comes to the opposite conclusion and expressly reverses *Davis.* Because I cannot reconcile this result with the principle of *stare decisis,* I respectfully dissent.

Review of a double jeopardy claim directed against a criminal statute which appears to permit cumulative sentencing involves a two step analysis: (1) Cumulative punishment for the same offense is not authorized in the absence of "a clear indication of contrary legislative intent" *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980) and (2) where the legislative intent is not clear a constitutional analysis under the Double Jeopardy Clause of the Fifth Amendment is required. *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). Both the *Davis* Court and the majority here have confined their rulings to a search for statutory intent without proceeding to consider constitutional grounds. In short, both Courts applied the same test with exactly opposite results. Not only does the majority reach a contrary conclu-

sion concerning legislative intent, it does so under its stated standard of discerning "the clearly expressed intent of the General Assembly." Although the majority appears to fault the *Davis* Court for not conducting "a *Blockburger*-style analysis" in order to address constitutional arguments, such an analysis was neither required nor justified under the circumstances. This Court has consistently declined to decide a question on constitutional grounds if it may be resolved on statutory grounds. *State v. Cahill,* Del.Supr., 443 A.2d 497, 498 (1982). Indeed, the majority's own analysis here eschews constitutional review in reaching its ultimate determination of clear legislative intent.

I find nothing which has occurred in the last seven years which would justify a ruling by this Court that the "clear legislative intent" as to cumulative sentences was different than that found by this Court in *Davis.* The sparse legislative record which was reviewed in *Davis* has not been enlarged here.[1] Nor has subsequent federal decisional law as exemplified by *Missouri v. Hunter,* and *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) weakened the statutory intent approach employed in *Davis.* The federal decisions did require this Court to reexamine its holdings in *Hunter v. State,* Del. Supr., 420 A.2d 119 (1980) and *Evans v. State,* Del.Supr., 420 A.2d 1186 (1980), but only because the double jeopardy claims in those cases had been decided on constitutional, not statutory, grounds. It is clear that this Court's decision in *Davis* remained unaffected by the developing federal decisions because the final interpretation of state statutory law is exclusively within the province of this Court, absent the entanglement of federal constitutional issues.

This case presents a clear question of state law interpretation and the majority opinion has thoroughly examined the obvious statutory conflict. If we were writing on a clean slate in the search for legislative intent, the majority's reasoning and craftsmanlike analysis might be persuasive. The need for stability and predictability in the law, however, militates against the result reached by the majority.

I would reverse the judgment of the Superior Court as contrary to the clear holding of *Davis.* Accordingly, I dissent.

### ON DEFENDANT'S MOTION FOR REARGUMENT

■ Although the foregoing opinions were issued upon reargument after an initial affirmance of the trial court, the defendant now raises for the first time the question of retroactive application of the majority's opinion. Clearly, this is a matter which defense counsel should have anticipated as a natural implication of overruling *Davis.* However, to accommodate the defendant's belated concern, the matter is remanded to the Superior Court for resentencing in light of defendant's retroactivity claims. Such questions should be considered by the trial court in the first instance. Supreme Court Rule 8. On the foregoing basis the Court unanimously orders that the Motion for Reargument be, and the same hereby is,

DENIED.

1. Although the point is not determinative on the question of legislative intent, it is worth noting that the General Assembly has not acted in the intervening years to modify the statute to achieve what the majority views as "clear legislative intent." By contrast, following this Court's decision in *Smith v. State,* Del.Supr., 412 A.2d 331, 332 (1980), holding that the legislature apparently did not intend that the mandatory prison term provided for a conviction of robbery first degree under 11 *Del.C.* Sec. 832(c) be extended to include an attempt to commit that crime, the legislative response was to amend Section 832 to extend mandatory imprisonment to attempted robbery. 63 Del. Laws C. 329 (codified at 11 *Del.C.* § 832(d)).