Paul STIGARS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 422, 1993.

Supreme Court of Delaware.

Submitted: January 18, 1996.
Decided: April 1, 1996.

David W. Jones (argued), Blades, Jones & Welch, P.A., Dover, for Appellant.

Timothy J. Donovan, Jr. (argued), and Steven P. Wood, Department of Justice, Wilmington, for Appellee.

Before HOLLAND, HARTNETT, and BERGER, JJ.

HARTNETT, Justice.

### I.

In this appeal, Appellant, Defendant Below, Paul Stigars ("Stigars") challenges two rulings made by the Superior Court during the jury trial that concluded with him being

convicted of second degree robbery, felony theft, third degree burglary, and criminal impersonation. Stigars was sentenced to consecutive sentences on each count. Stigars contends that the Superior Court erred when it denied his motion to proceed *pro se* and when it denied his motion to dismiss the charge of felony theft as being a lesser offense included in the charge of robbery. We agree and, therefore, must reverse the judgments of conviction of the Superior Court.

## II.

Stigars' convictions stem from the January 31, 1992, robbery of a Christiana School District van that was being used to deliver mail and pick up lunch money. On that day, approximately $600 was taken from the van, which had been left temporarily unattended. While exiting the vehicle, the perpetrator of the robbery shoved past the van's driver who was returning from making his delivery rounds. Relying on eyewitness information, the police apprehended Stigars approximately ten minutes after the robbery. He was subsequently arrested and charged with the offenses for which he was convicted.

On the morning of trial, Stigars requested leave of the court to discharge his court appointed counsel and represent himself. After a lengthy colloquy, the trial judge denied the request. Prior to trial, Stigars, through his counsel, had moved to dismiss the charge of felony theft from the indictment because, he argued, felony theft was a lesser offense included in the second degree robbery charge. The trial court reserved decision on the motion but, without ruling on it, instructed the jury on felony theft as a separate charge.

## III.

We first address Stigars' contention that the Superior Court infringed upon his constitutional right to represent himself by denying his request to proceed without counsel.

■ The right to represent oneself in a criminal proceeding is fundamental. It is protected by the Sixth Amendment to the United States Constitution and by Article I, § 7 of the Delaware Constitution. *Hooks v.*

*State*, Del.Supr., 416 A.2d 189, 197 (1980) (citing *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975)); *Snowden v. State*, Del.Supr., 672 A.2d 1017 (1996). As an issue of constitutional dimension, we review *de novo* the trial court's denial of Stigars' request to proceed *pro se*. *Grace v. State*, Del.Supr., 658 A.2d 1011, 1015 (1995).

■ Although the right to self-representation is fundamental, the exercise of this right is not unqualified. Before a trial court may permit a defendant to represent himself, the court must: 1) determine that the defendant has made a knowing and voluntary waiver of his constitutional right to counsel; and 2) inform the defendant of the risks inherent in going forward in a criminal trial without the assistance of legal counsel. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *Briscoe v. State*, Del.Supr., 606 A.2d 103, 107–108 (1992); *see Hooks*, 416 A.2d at 197.

■ *Briscoe*, relying on *United States v. Welty*, 674 F.2d 185 (3rd Cir.1982), sets forth the guidelines for a determination as to whether a defendant has adequately waived the right to counsel. 606 A.2d at 108. Conducting the inquiry into whether there has been a knowing waiver of counsel is often a difficult task. *Id.* at 107. The trial court must balance the defendant's right to counsel against his right to represent himself. *Tuitt v. Fair*, 822 F.2d 166, 174–75 (1st Cir.1987), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987); *see also Hicks v. State*, Del.Supr., 434 A.2d 377, 380 (1981) (recognizing the "difficult question" presented to a trial court in attempting to protect the basic rights of a defendant who refuses the assistance of counsel). When faced with an ambiguous request for self-representation, a trial court should lean in favor of the right to counsel. *Tuitt*, 822 F.2d at 174.

■ The difficulty of establishing the existence of an adequate waiver of the right to counsel does not, however, diminish a court's responsibility to scrupulously honor an unequivocal request to proceed *pro se*. *See Raulerson v. Wainwright*, 469 U.S. 966, 969, 105 S.Ct. 366, 368–69, 83 L.Ed.2d 302 (1984)

(mem.) (Marshall, J., dissenting) (cautioning that the assertion of the right to proceed *pro se* should not be overlooked in an effort to protect the right to counsel).

After Stigars asserted his right to represent himself, the trial judge thoroughly questioned him about why he desired to forgo the services of his court appointed counsel. Stigars gave various fallacious reasons for seeking to relinquish the services of his attorney. Some of them were: 1) he believed that the Public Defender's Office was required to secure the approval of the Attorney General before spending funds for investigative purposes; 2) he believed that his lawyer had betrayed a confidence by discussing his criminal record with a correctional officer; and 3) he believed that his lawyer was conspiring with the prosecution against him because he believed his attorney had agreed with the State not to give him a copy of his police report.

Notwithstanding Stigars' initial misunderstanding of the activities of his appointed counsel, it is clear that Stigars made a knowing and voluntary waiver of his right to counsel. In addition to establishing the reasons Stigars no longer wanted to be represented by his appointed counsel, the court learned that Stigars possessed a high school education, had some training as a paralegal and had participated in his own defense in at least one prior criminal proceeding. The record also shows that Stigars recognized the potential dangers inherent in proceeding in the absence of counsel and understood the seriousness of the charges against him. He was specifically aware that, if convicted of the charged offenses, he faced sentencing as a habitual offender. *See* 11 Del.C. § 4214(a).

Despite the expressed desire of Stigars to proceed *pro se,* the trial judge, after his inquiry, held that Stigars could not represent himself because he found that Stigars' reasons for requesting to do so lacked merit. This was error. If a defendant has knowingly and voluntarily waived his right to counsel, the wisdom of his decision to represent himself is not an issue for the courts. It is for the defendant alone to decide "whether in his particular case counsel is to his advantage." *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2541;

*see Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir.1986), *cert denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). While it was proper and desirable for the trial court to have discussed with Stigars his reasons for wishing to proceed *pro se,* once a defendant has invoked the right to self-representation that decision must be honored unless, after discussing his request with the trial judge, the defendant expresses a contrary desire. *See Snowden v. State,* Del.Supr., 672 A.2d 1017 (1996).

Based on the record before us, we are compelled to conclude that Stigars never retracted his initial request to represent himself. We have repeatedly emphasized the importance of the trial court record in our review of whether a defendant has waived a constitutional right. *See Briscoe,* 606 A.2d at 108 (holding that a proper Sixth Amendment waiver must appear on the record); *Hooks,* 416 A.2d at 197 (holding that the right to self-representation may only be invoked after the defendant's decision to waive the assistance of counsel is reflected in the record). Although our decisions in *Briscoe* and *Hooks* focused on the right to counsel rather than the right to self-representation, the reasoning underlying those decisions is equally applicable to the present case—the right to self-representation is central to our adversarial system of justice and is specifically guaranteed by the Delaware Constitution; *Snowden v. State,* Del.Supr., 672 A.2d 1017 (1996); *see also Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Allen v. Division of Child Support,* Del.Supr., 575 A.2d 1176, 1185 (1990); therefore, any waiver affecting that right must be clearly shown in the record. *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) (refusing to presume the waiver of a constitutionally protected right from a silent record); *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

The importance of the right to self-representation requires that once a defen-

dant effectively invokes his right to proceed *pro se,* a later revocation of that request must appear on the record. Here the record shows that, after explaining to Stigars that his concerns regarding his attorney were unfounded, the trial court judge determined that it was not in Stigars' best interest to defend himself. There is nothing in the record to show that Stigars concurred in the judge's assessment. Absent a clear revocation by Stigars of his previously asserted request to represent himself, we must conclude that the trial court erred when it forced Stigars to accept the services of his court appointed counsel; and in so erring it violated Stigars' constitutional right to self-representation. This requires a reversal.

### IV.

■ Because of the likelihood of a retrial, we address Stigars' contention that the trial court erred when it gave him cumulative sentences for felony theft and second degree burglary. Despite his motion to dismiss the charge of felony theft, Stigars was convicted and sentenced to consecutive terms of incarceration for the charge of felony theft and the charge of robbery in the second degree. Stigars contends that these cumulative sentences violate the double jeopardy clauses of the United States and Delaware Constitutions because the General Assembly did not intend separate punishments for charges of felony theft and robbery that arise from a single instance of criminal conduct. As this claim alleges the infringement of a constitutionally protected right, we perform a *de novo* review to determine whether the trial court erred in failing to grant Stigars' pretrial motion to dismiss the felony theft charge. *See Grace v. State,* Del.Supr., 658 A.2d 1011, 1015 (1995).

■ "When cumulative sentences are imposed in a single trial, the Double Jeopardy Clause operates to prevent the sentencing court from meting out a greater punishment than that intended by the legislature." *Le-Compte v. State,* Del.Supr., 516 A.2d 898, 900 (1986) (citing *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983)). The key question presented by a claim of double jeopardy that is based on

multiple punishments is: did the General Assembly intend to impose more than one punishment for a single occurrence of criminal conduct. *Missouri v. Hunter,* 459 U.S. at 366–68, 103 S.Ct. at 678–79.

■ In seeking to ascertain legislative intent, we must first look at the text of the statute in its context. *State Dept. of Labor v. Reynolds,* Del.Supr., 669 A.2d 90, 93 (1995), *Hudson Farms, Inc. v. McGrellis,* Del.Supr., 620 A.2d 215, 217 (1993).

Title 11, Del.C. § 841(a) states in pertinent part: "A person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it...." Theft is a felony when the property taken is worth $500 or more. 11 Del.C. § 841(c).

A second degree robbery charge is established upon a showing that an individual used force or the threat thereof while in the course of committing theft.

> A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person with the intent to: (1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) Compel the owner of the property or another person to deliver up the property or to engage in other which aids in the commission of the theft.

11 Del.C. § 831.

■ It is unclear from the text of these statutes whether the General Assembly intended that felony theft be punished distinctly from robbery when both offenses arise from a single event. Because the text of the statutes is unclear, we must use aids to construction to ascertain the intent of the General Assembly. *Keeler v. Harford Mutual Ins. Co.,* Del.Supr., 672 A.2d 1012 (1996); *Acierno v. Worthy Bros. Pipeline Corp.,* Del.Supr., 656 A.2d 1085, 1088 (1995).

When attempting to determine whether the General Assembly intended that two punishments be levied for the same occurrence,

this Court has generally employed the *Blockburger* test: does each offense require proof of a fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Chao v. State*, Del.Supr., 604 A.2d 1351, 1361 (1992); *Hackett v. State*, Del.Supr., 569 A.2d 79, 80 (1989); *LeCompte*, 516 A.2d at 900. The *Blockburger* test is consistent with 11 Del.C. § 206, which provides:

(a) When the same conduct of a defendant may establish the commission of more than 1 offense, ... The defendant may not ... be convicted of more than one offense if: (1) One offense is included in the other, as defined in subsection (b) of this section; ....

(b) ... An offense is so included when: (1) It is established by the proof of the same or less than all the facts required to establish the commission of the offense charged; ....

The State argues that the charge of felony theft is distinguishable from a second degree robbery charge in that the latter offense does not require the value of the property taken to meet or exceed $500. The State further argues that, according to the *Blockburger* test, the General Assembly intended separate punishments for theft and robbery even if the offenses arose out of the same conduct. Stigars, however, argues that the *Blockburger* test does not control because the commentary to the 1973 *Delaware Criminal Code with Commentary* clearly shows that the General Assembly, when enacting the 1973 Criminal Code, did not intend that felony theft be punished separately from robbery.

■ We find no reason to resort to the *Blockburger* test in this case. It is only an aid to statutory construction. *Hackett*, 569 A.2d at 80. *LeCompte*, 516 A.2d at 901 (quoting *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1142–43, 67 L.Ed.2d 275 (1981)). It does not negate clearly expressed legislative intent and where, as here, a better indicator of legislative intent is available, it does not apply. *Missouri v. Hunter*, 459 U.S. at 366–69, 103 S.Ct. at 678–79; *LeCompte*, 516 A.2d at 901–902.

■ The statutes in question are part of the 1973 Delaware Criminal Code enacted in 1972 by 58 Del.L. c. 497. The commentary contained in the 1973 *Delaware Criminal Code with Commentary* clearly shows that the drafters of the 1973 Criminal Code intended that felony theft be a lesser offense included in the offense of robbery. Although adopted in 1972, the 1973 Criminal Code was initially drafted in 1967 by the Governor's Committee for Revision of the Criminal Law as the *Proposed Criminal Code*. The commentary in the 1973 *Delaware Criminal Code with Commentary* is based on the commentary that accompanied the 1967 *Proposed Criminal Code*, as revised to reflect the changes made by the General Assembly to the 1967 draft when it enacted the 1973 Criminal Code.

The commentaries in the 1973 *Delaware Criminal Code with Commentary* that speak to the crimes of theft and robbery are identical to the commentary to the 1967 *Proposed Criminal Code*. Appendix B of the 1973 *Delaware Criminal Code with Commentary* and Appendix B in the 1967 draft both list theft as a lesser included offense of robbery. Additionally, the part of the 1973 commentary that addresses the robbery statute, 11 Del.C. § 831, defines robbery as "forcible theft" and expresses the drafters' intention that the theft involved in the commission of a robbery not be punished separately from robbery. That commentary reads:

It seems desirable to treat the robber more seriously than the stealthy thief because the former is not deterred by the presence of his victim or by sanctions against injuring or threatening his victim. He is thus more dangerous and more upsetting than the sneak thief or the embezzler. Once a threat has been made as required by the section, no danger seems to be added by a taking from the person, ....

1973 *Delaware Criminal Code With Commentary*, at 258. In the 1967 *Proposed Criminal Code*, robbery in the second degree appeared as 11 Del.C. § 520 with the same commentary. Both comments make no distinction between felony and misdemeanor theft.

In the search for legislative intent, considerable weight is given to an official commentary written by the drafters of the statute. The commentary is even more persuasive if, as here, it was available to the legislature before a statute was enacted. *Acierno v. Worthy Bros. Pipeline Corp.*, Del. Supr., 656 A.2d 1085, 1090 (1995); *Siegman v. Columbia Pictures Entertainment Inc.*, Del.Ch., 576 A.2d 625, 634 (1989); *see Re v. State*, Del.Supr., 540 A.2d 423, 426 (1988). The commentaries in the 1967 *Proposed Criminal Code* and in the 1973 *Delaware Criminal Code with Commentary* reflect the General Assembly's intention that felony theft be a lesser offense included in the charge of robbery.

NOW, THEREFORE, the judgments of conviction are **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this opinion.