STATE of Delaware

v.

**Robin L. AMAD, Defendant.**

Nos. IK98–02–0009–0018, IK98–02–0020–
0021, IK98–03–0035–0045.

Superior Court of Delaware,
Kent County.

Submitted: Dec. 4, 1998.
Decided: Feb. 17, 1999.

John R. Garey, Esq., of the Department of Justice, Dover, DE for the State.

Lloyd A. Schmid, Esq., of the Office of the Public Defender, Dover, DE for the Defendant.

**OPINION**

VAUGHN, Resident Judge.

Defendant Robin L. Amad ("Amad") was convicted by a jury on November 20, 1998 of eighteen felony offenses arising out of a twenty-two count indictment. The offenses for which the Defendant was convicted include Robbery in the First Degree, three counts of Possession of a Firearm during the Commission of a Felony (PFDCF), four counts of Aggravated Menacing, and four counts of Unlawful Imprisonment in the First Degree.[1] The Unlawful Imprisonment in the First Degree convictions were lesser included offenses of four counts of Kidnaping in the First Degree which were charged in the indictment. These charges all arose out of a January 26, 1998 armed robbery of the Delmarva Fife Federal Credit Union in Houston, Delaware. Amad has moved for judgment of acquittal on the four Kidnaping in the First Degree charges, which resulted in the convictions of Unlawful Imprisonment in the First Degree, and the three counts of PFDCF, for which Unlawful Imprisonment in the First Degree is the underlying felony, contending that he

cannot be convicted and sentenced for both robbery and kidnaping (or unlawful imprisonment) under the facts of this case. He has also moved for judgment of acquittal on the four Aggravated Menacing counts, contending that the Aggravated Menacing and Robbery in the First Degree charges contain the same elements. For the reasons which follow, Amad's motion is denied.

**I. BACKGROUND**

On January 26, 1998, four men, their faces covered by bandanas, entered the Delmarva Fife Federal Credit Union in Houston, Delaware. Three of the men brandished firearms and the fourth carried duct tape. Upon entering, they encountered four credit union employees. Although the closing hour of the credit union was 4:00 p.m., the employees had not yet locked the front door when the four men arrived at approximately 4:05 p.m. Moving quickly, the men forced two of the employees to the floor, face down, and bound their hands behind them with duct tape. They ascertained the location of the credit union's cash from the other two employees, and then forced them to the floor, binding them in the same manner as the others. The sum of $2,692.00 was stolen from the credit union cash register. Before leaving, the men blasted a telephone and computer monitor with a shotgun, causing their shattered pieces to fall over the persons of two of the employees. They then made their escape, leaving the employees bound on the floor. The entire robbery took less than twenty minutes. Within less than five minutes after the robbers had left, one of the employees was able to free himself. He freed the other employees and called 911. Three of the men were apprehended within the hour. The fourth, Robin L. Amad, was apprehended before the end of the day.

At the conclusion of the State's case in chief, the defendant moved for judgment

1. Only those offenses which are relevant to the issues discussed herein are mentioned.

of acquittal on the four Kidnaping in the First Degree charges and the three PFDCF charges for which Kidnaping in the First Degree was the underlying felony. The defendant's motion, which was based on *Weber v. State*,[2] asserted that (1) Kidnaping in the First Degree requires that there must be restraint of a victim which is independent of and substantially greater than any restraint which is ordinarily incident to Robbery in the First Degree, (2) the Court must initially determine that there is evidence of such substantial and independent restraint before allowing the Kidnaping in the First Degree charge to be submitted to the jury, and (3) on the facts of this case, as a matter of law, the restraint imposed on the credit union employees was incidental to, and not independent of, the underlying robbery. While agreeing with the defendant's analysis of the requirements of *Weber*, the Court concluded that the binding of the employees with duct tape was a substantial restraint which was not necessarily incident to Robbery in the First Degree, and that the kidnaping charges should therefore be submitted to the jury.

When the jury was instructed, the Kidnaping in the First Degree instruction set forth the statutory definition of "restraint" and then went on to inform the jurors that they could not find the defendant guilty of Kidnaping in the First Degree unless they found, beyond a reasonable doubt "...[t]hat the restraint and/or movement of the victim [was] independent of and not incidental to the offense of Robbery in the First Degree. Restraint and/or movement is 'independent of and not incidental to' an offense when it involves much more substantial interference with the victim's liberty than what is normally incident to Robbery in the First Degree."

At the request of the defendant and over the objection of the State, the Court also instructed the jury on the lesser included offenses of Unlawful Imprisonment in the First Degree and Unlawful Imprisonment in the Second Degree. The defendant requested that the instructions on Unlawful Imprisonment in the First Degree and Unlawful Imprisonment in the Second Degree include the same above-quoted language contained in the Kidnaping in the First Degree instruction. This request was denied.

At the conclusion of the State's case in chief, the defendant also moved for judgment of acquittal on the four Aggravated Menacing counts, contending, in substance, that Aggravated Menacing is a lesser included offense of Robbery in the First Degree when the robbery is alleged to be first degree because of the display of a deadly weapon. This part of the defendant's motion was also denied.

The defendant has now renewed his motions for judgment of acquittal.

## II. DISCUSSION

### A. The Kidnaping Charges

When a defendant is charged with kidnaping in conjunction with an underlying offense, the jury must be instructed that the restraint upon which the kidnaping is premised has to be independent of and not incidental to the underlying crime in order to convict for kidnaping.[3] In addition, the kidnaping charge should be submitted to the jury only after the trial judge makes an initial determination that the facts of the case support an independent conviction for kidnaping.[4] In other words, the trial judge must first determine, as a matter of law, if the evidence proves "that there was 'much more' (substantial) interference with the victims (sic) liberty than is ordinarily incident to the underlying crime."[5] If the Court, after performing this initial determination, is

2. Del.Supr., 547 A.2d 948 (1988).

3. *Weber*, 547 A.2d at 959.

4. *Id.*

5. *Id.*

satisfied that the jury could reasonably conclude beyond a reasonable doubt that the restraint was substantially greater than that normally incident to the underlying robbery, the charge may be submitted to the jury with the required instruction. Whether the restraint involved is sufficient to constitute kidnaping then becomes a factual question for the jury.[6]

Although Amad correctly points out that some jurisdictions have held, as a matter of law, that binding a victim does not rise to the level of independent restraint,[7] other jurisdictions have arrived at the opposite conclusion even where the victim is restrained in the same room.[8] Further, the Delaware Supreme Court has upheld separate robbery and kidnaping convictions where the victim was assaulted and bound to a chair in her home.[9]

■ The degree or amount of restraint which is ordinarily incident to robbery consists of that restraint which is necessary to prevent or overcome resistance to the taking and retention of property, or to compel or otherwise cause the victim to deliver up the property. In this case, each of the credit union employees had their hands bound behind their backs with duct tape, while they were face down, on the floor. This restraint commenced during the robbery and continued after the robbery was concluded. The fact that the victims were able to escape their bindings so quickly does not diminish the nature of the restraint imposed. While the restraint imposed was obviously done to facilitate the robbery and the flight therefrom, the Court remains convinced that the restraint could be viewed by a reasonable juror as "much more" restraint than that necessary to accomplish the theft of the credit union money. Therefore, the issue was properly presented to the jury for its determination pursuant to the instructions given.

### B. The Unlawful Imprisonment Instruction

■ The Unlawful Imprisonment in the First Degree instruction set forth the statutory elements of that offense, including the statutory definition of restraint; but the Court declined a defense request that the instruction also include the additional language regarding restraint, quoted above, which was included in the Kidnaping in the First Degree instruction as required by *Weber.* There are significant differences between kidnaping and unlawful imprisonment. The holding in *Weber* does not, by its terms, extend beyond kidnaping. Amad was indicted for Kidnaping in the First Degree under the theory that he used restraint in order to facilitate the commission of a robbery or the flight therefrom.[10] Therefore, the underlying robbery is an integral part of the elements

6. *State v. Walls,* Del.Super., Cr. A. No. IN86–03–0534RI, 1993 WL 603347, Gebelein, J. (July 20, 1993)(Mem.Op.).

7. *See People v. Cheffen,* 2 Cal.App.3d 638, 82 Cal.Rptr. 658 (1969)(kidnaping convictions reversed where the defendant, in the course of committing a robbery, bound the victims with neckties before leaving the victims' residence).

8. *See Frensley v. State,* 291 Ark. 268, 724 S.W.2d 165 (1987)(kidnaping convictions upheld where defendant, in the course of committing a robbery, bound the victims with tape and made them lie on the floor because the court found that the restraint used was greater than that normally incident to robbery); *Sorey v. State,* 419 So.2d 810 (Fla.Dist.Ct.App.1982)(kidnaping convictions upheld where defendant, in the course of committing a robbery, bound the victims with rope and made them lie on the floor because the court found that the restraint facilitated the defendant's escape and lessened the risk of detection); *State v. Brooks,* 222 Kan. 432, 565 P.2d 241 (1977)(kidnaping convictions upheld where defendant, in the course of committing a robbery, bound the victims with refrigeration tape because the court found that the restraint was not a necessary part of the robbery and only served to facilitate escape and avoid detection).

9. *Sanders v. State,* Del.Supr., 660 A.2d 395 (table), No. 256, 1994, Berger, J. (May 1, 1995)(Order).

10. *See* 11 *Del. C.* § 783A(3).

of the kidnaping offense. However, there is no such element within the crime of unlawful imprisonment.[11] In other words, the commission of a separate felony is not a component of the crime of unlawful imprisonment,[12] and therefore the nature of the underlying crime need not be considered. In addition, the *Weber* case, as well as *Burton v. State*,[13] which preceded it, both explain that the jury instruction now made mandatory by *Weber* has its origins in the official commentary to the kidnaping section of the 1973 Delaware Criminal Code.[14] However, the pertinent language contained in that commentary is not found in the commentary to the unlawful imprisonment statutes.[15] Therefore, the Court finds that there is no requirement that *Weber* language be included in the unlawful imprisonment instruction.

Finally, given the Court's denial of the motion for judgment of acquittal with regard to the Kidnaping in the First Degree charges and the Unlawful Imprisonment in the First Degree convictions, there is no basis for judgment of acquittal of the three related PFDCF charges.

### C. The Aggravated Menacing Charges

■ Finally, Amad contends that the charges of Aggravated Menacing and Robbery in the First Degree, where the robbery charge is based on the display of a deadly weapon, contain the same elements, and are, therefore, in substance, one offense, precluding separate punishment for each. However, under the *Blockburger* rule,[16] separate conviction and punishment

for two crimes is permitted if each contains an element which is not found in the other. In the case of Aggravated Menacing and Robbery in the First Degree, each crime contains an element that the other does not, and therefore neither is a lesser included offense of the other under the *Blockburger* test.

■ A defendant can be charged with and convicted of Aggravated Menacing "when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury."[17] A defendant can be charged with and convicted of Robbery in the First Degree "when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, the person or another participant in the crime ... [d]isplays what appears to be a deadly weapon."[18] Although both crimes contain as an element the display of a deadly weapon, they each contain an element which the other does not. For example, Robbery in the First Degree requires the commission of a theft[19] which is not a component of Aggravated Menacing. On the other hand, Aggravated Menacing requires not only the display of a deadly weapon but also the specific intent to place another in fear of imminent physical injury, which is not an element of Robbery in the First Degree. Further, the two offenses are listed in separate subchapters within the criminal code, indicating that the legislature did not

---

11. See 11 *Del. C.* §§ 781 and 782.

12. *Key v. State*, Del.Supr., 463 A.2d 633, 640 (1983).

13. Del.Supr., 426 A.2d 829 (1981).

14. *See Delaware Criminal Code with Commentary* § 783, at 228 (1973).

15. *See Delaware Criminal Code with Commentary* § 781, at 223–25 (1973).

16. *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

17. 11 *Del. C.* § 602(b).

18. 11 *Del. C.* § 832(a)(2).

19. Robbery in the Second Degree, which is an element of Robbery in the First Degree, states in pertinent part that a person is guilty "when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person...." 11 *Del. C.* § 831.

consider them related.[20] Therefore, I find that Aggravated Menacing and Robbery in the First Degree are two separate offenses, despite the similar element of the display of a deadly weapon.

First Degree, Possession of a Firearm during the Commission of a Felony and Aggravated Menacing is *denied.*

*IT IS SO ORDERED.*

### III. CONCLUSION

For the foregoing reasons, Defendant Amad's motion for judgment of acquittal on the charges of Kidnaping in the First Degree, Unlawful Imprisonment in the

20. In fact, Aggravated Menacing is located in the same subchapter as Assault in the First Degree, which is not a lesser included offense

of Robbery in the First Degree. *See Hackett v. State,* Del.Supr., 569 A.2d 79 (1990).