**Reheem POTEAT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 94,2003.

Supreme Court of Delaware.

Submitted: Sept. 3, 2003.
Decided: Dec. 17, 2003.

Jerome M. Capone, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, DE, for appellee.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices, constituting the Court en Banc.

HOLLAND, Justice:

The defendant-appellee, Raheem Poteat ("Poteat"), was convicted, following a jury trial in the Superior Court, of three counts of Robbery in the First Degree, three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF") related to the robbery charges, three counts of Aggravated Menacing, and three counts of PFDCF related to the menacing charges. At trial, Poteat requested that the menacing charges and the related PFDCF charges be merged with the robbery charges and the PFDCF charges related to the robbery. The trial judge declined to merge the offenses.

In this matter, Poteat appeals from his sentencing on the menacing and related firearm charges. Poteat contends that the trial judge erred, as a matter of law, in ruling that the Aggravated Menacing and related firearm charges did not merge with the Robbery in the First Degree and related possession charges. This error, argues Poteat, violated the principles of double jeopardy under the Fifth Amendment to the United States Constitution.

We have concluded that Aggravated Menacing is a lesser-included offense of Robbery in the First Degree. Accordingly, we hold that principles of double jeopardy bar the Superior Court from sentencing Poteat for both Robbery in the First Degree and Aggravated Menacing. We further hold that, to the extent our opinion in *State v. Amad*[1] is inconsistent with our holding today, it is overruled.

### Facts

Near midnight on April 5, 2002, four masked gunman entered the Peddler's Pit Stop liquor store in Newark. They were the appellant, Raheem Poteat, Robert Benson, Chris Gray and Jamah Grosnevnor. In the store at the time were the proprietors Ravindra Patel and his wife Duana, their five-year old son, Mihir, and one customer, Larry Shuler.

Upon entering the store, the four gunman—with their weapons drawn—split up. Two went behind the counter where Mrs. Patel was standing. One pointed a gun at her chest, the other at her head, telling her not to "do anything stupid." They then forced her to open the cash register and safe.

The third and fourth gunmen went to the back of the store. One gunman con-

---

1. *State v. Amad,* 767 A.2d 806 (Del.Super.1999), *aff'd,* 755 A.2d 386 (Del.2000) (TA- BLE).

fronted Mr. Patel, while the other gunman confronted Mr. Shuler. With a gun to his head, Mr. Patel was forced to lie on the floor while the robber went through his pockets. Mr. Shuler, too, was forced to lie on the floor, gun to his head, while he was robbed of some cash in his pockets.

The four men then fled from the store with the money they had stolen. A police officer was nearby, and the men were arrested just minutes after the robbery. All were charged with numerous crimes, including three counts of Robbery in the First Degree, three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF") relating to the robbery charges, three counts of Aggravated Menacing, and three counts of PFDCF relating to the menacing charges.

## Motion at Trial

Two men, Grosnevor and Gray pled guilty before trial. Poteat and Benson were tried together. During trial, the defense moved to dismiss the Aggravated Menacing charges, the three PFDCF charges relating to the Aggravated Menacing, and a charge of Conspiracy in the Second Degree. The defense argued that principles of double jeopardy required that these charges be merged with the three Robbery in the First Degree counts, the related PFDCF charges, and the Conspiracy charges related to the robbery.

After hearing the arguments of both the prosecution and defense, the trial judge declined to make an immediate ruling. The trial judge stated he would take the issue "under advisement" and would consider the defense's request if the jury's verdict rendered it necessary. The judge also stated that the parties could submit post-trial memoranda on the issue.

The jury returned a verdict of guilty on all of the robbery counts and all of the menacing counts. The jury also returned guilty verdicts on all of the PFDCF charges accompanying the robbery and menacing charges. Neither party submitted any post-trial memoranda regarding the defense's double jeopardy argument. The trial judge implicitly denied the defense's motion for merger of the robbery and menacing offenses when Poteat was sentenced on all of the convictions for all of the charges.

## Merger Issue Not Waived

The State contends that Poteat waived his merger argument by failing to brief the double jeopardy issue after trial and before sentencing. Generally, an issue not properly preserved at trial is waived for purposes of appeal.[2] In this case, however, Poteat's motion to merge the offenses of Robbery in the First Degree and Aggravated Menacing on double jeopardy grounds was properly preserved.

After Poteat's argument had been fairly presented, the trial judge did not order post-trial supplemental memoranda to be filed. Instead, the trial judge merely extended to counsel for both sides the opportunity to brief the issue if they so desired. Under those circumstances, the fact that neither side filed post-trial memoranda at that stage does not mean Poteat waived the issue for purposes of appeal. Accordingly, we hold that Poteat properly preserved his objection to the Superior Court's failure to merge the menacing and robbery charges.

## Double Jeopardy Clause[3]

The Fifth Amendment to the United States Constitution guarantees three

**2.** *Weedon v. State,* 647 A.2d 1078, 1082 (Del. 1994).

**3.** The double jeopardy language of the Delaware Constitution is similar to the language

protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."[4] Poteat challenges his sentencing based on the third listed protection.

The issue to be decided by this Court is whether the charges of Aggravated Menacing and PFDCF merge into the charge of Robbery in the First Degree. This Court has previously noted that "the Double Jeopardy Clause has been described ... as 'both one of the least understood and, in recent years, one of the most frequently litigated provisions of the Bill of Rights.'"[5] Chief Justice Rehnquist has stated: "[the United States Supreme Court] has done little to alleviate the confusion, and our opinions, including ones authored by me, are replete with *mea culpa*'s occasioned by shifts in assumptions and emphasis."[6] It now appears that this Court's prior decision in *Amad* also contributed to that confusion.

## Multiple Punishments

 Generally, multiple punishments are "not imposed for two offenses arising out of the same occurrence unless each offense requires proof of a fact which the other does not."[7] This Court has previously noted that "[t]he assumption underlying [this rule] is that [the legislature] ordinarily does not intend to punish the same offense under two different statutes. However, that rule of construction gives way in the face of clear legislative intent to the contrary."[8] Consequently, absent clear legislative intent to the contrary, separate sentences are not permitted where the offenses are the same.[9]

## Legislative Intent

 The question of whether Aggravated Menacing and the related PFDCF charge merge into Robbery in the First Degree is one of statutory construction and is, therefore, subject to *de novo* review.[10] The question presented by a claim of double jeopardy that is based on multiple punishments is: did the General Assembly intend to impose more than one

in the United States Constitution. See Del. Const. art. I, § 8; *State v. Cook*, 600 A.2d 352, 354 n. 3 (1991); *White v. State*, 576 A.2d 1322, 1324 n. 3 (1990). This Court has not yet been required to determine whether the federal and state double jeopardy provisions are identical in scope in all respects, and we do not address that issue today. Therefore, this opinion is decided solely on the basis of Poteat's argument pursuant to the Double Jeopardy Clause in the United States Constitution.

4. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *see also State v. Cook*, 600 A.2d 352, 354 (1991).

5. *State v. Cook*, 600 A.2d at 354 (quoting *Whalen v. United States*, 445 U.S. 684, 699, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (Rehnquist, J., dissenting)); *see also White v. State*, 576 A.2d 1322 (Del.1990); *LeCompte v. State*, 516 A.2d 898 (Del.1986).

6. *Whalen v. United States*, 445 U.S. at 699, 100 S.Ct. 1432.

7. *LeCompte v. State*, 516 A.2d 898, 900 (Del. 1986) (citing *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)).

8. *Id.*; *see also State v. Cook*, 600 A.2d 352, 355 (Del.1991).

9. *Missouri v. Hunter*, 459 U.S. 359, 367, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (quoting *Whalen v. United States*, 445 U.S. at 693, 100 S.Ct. 1432). Alternatively, where the intent of the legislature to impose cumulative sentences is clear, multiple punishments are not barred. *State v. Cook*, 600 A.2d at 355; *LeCompte v. State*, 516 A.2d at 901.

10. *State Dept. of Labor v. Reynolds*, 669 A.2d 90, 92 (Del.1995).

punishment for a single occurrence of criminal conduct?[11] In seeking to ascertain legislative intent, we first look at the text of the applicable statute.[12] In this case, we must look at the text of several statutes.

Title 11, Del. C. § 206 governs the prosecution of multiple criminal offenses arising out of the same occurrence. Under that section, a defendant may not be convicted of more than one offense if "one offense is included in the other." An offense is "included in the other" if:

(1) It is established by the proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(3) It involves the same result but differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.[13]

Robbery in the First Degree is listed at Del.Code Ann. tit. 11, § 832. That statute reads, in relevant part:

(a) A person is guilty of robbery in the first degree when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, the person or another participant in the crime:

(2) Displays what appears to be a deadly weapon;[14]

Robbery in the Second Degree, which is incorporated by reference into the definition of Robbery in the First Degree, requires that "the person uses or threatens the immediate use of force upon another person...."[15]

Aggravated menacing is codified at Title 11, Del. C. § 602(b). That statute reads, in its entirety:

(b) A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury. Aggravated menacing is a class E felony.[16]

The issue presented by Poteat is whether the language for Aggravated Menacing—that a person must display "what appears to be a deadly weapon [with which] that person intentionally places another person in fear of imminent physical injury"—is so similar to the language for Robbery in the First Degree—requiring a defendant "use or threaten the immediate use of force upon another person" and "display what appears to be a deadly weapon"—that the General Assembly intended these crimes to be punished separately.

The State contends that the issue of merger of Aggravated Menacing and Robbery in the First Degree is controlled by *State v. Amad.*[17] In that case, as in this case, the Superior Court also had to determine whether the General Assembly intended that two punishments be imposed

---

**11.** *Stigars v. State,* 674 A.2d 477, 481 (Del. 1996).

**12.** *Stigars v. State,* 674 A.2d at 481; *State Dept. of Labor v. Reynolds,* 669 A.2d at 93.

**13.** Del.Code Ann. tit. 11, § 206(b) (2001).

**14.** Del.Code Ann. tit. 11, § 832 (2001).

**15.** Del.Code Ann. tit. 11, § 831 (2001).

**16.** Del.Code Ann. tit. 11, § 602(b) (2001).

**17.** *State v. Amad,* 767 A.2d 806 (Del.Super.1999).

for committing the crimes of Aggravated Menacing and Robbery in the First Degree during the same occurrence. In *Amad,* the Superior Court applied the *Blockburger* test: does each offense require proof of a fact that the other does not?[18] In *Amad,* the Superior Court concluded that the General Assembly intended for Aggravated Menacing and Robbery in the First Degree to be two separate and distinct offenses.[19] This Court affirmed that conclusion.[20]

In this case, in support of his double jeopardy argument, Poteat's attorney relies upon the official *Commentary to the Delaware Criminal Code of 1973* ("Commentary"). We have concluded, and the State acknowledges, that the Commentary unambiguously reflects a legislative intention for the crime of Menacing to be a lesser-included offense of the crime of Robbery in the First Degree. Unfortunately, when *Amad* was decided, that Commentary was not cited by any party in either the Superior Court or in this Court.

■■■ This Court has previously stated that the *Blockburger* test "is only an aid to statutory construction. It does not negate clearly expressed legislative intent and where ... a better indicator of legislative intent is available, it does not apply."[21] In ascertaining legislative intent, courts are required to give great weight to an official commentary written by the drafters of the statute.[22] A commentary "is even more

persuasive if, as here, it was available to the legislature before a statute was enacted."[23]

The Commentary to section 206 specifically states, as an example of lesser-included offenses, that **"attempted menacing and attempted robbery would be included under the crime of robbery, as would menacing itself...."**[24] The State acknowledges that Poteat's argument, based upon the Commentary to section 206 is persuasive. We agree that Commentary is the "better indicator of legislative intent." Accordingly, the *Blockburger* analysis does not apply to the case *sub judice.*

Since the Commentary's promulgation, the crime of Aggravated Menacing has been added to the Delaware Criminal Code. As it is currently defined, Aggravated Menacing is distinguished from the crime of Menacing only by the added condition that a defendant must display "what appears to be a deadly weapon" to the standard menacing language of "intentionally places another person in fear of imminent physical injury."[25] The additional requirement necessary for a crime to be elevated from Menacing to Aggravated Menacing, i.e. the display of what appears to be a deadly weapon, has no material impact on the Commentary's analysis, as Robbery in the First Degree contains the same requirement.[26]

The Commentary states that menacing is a lesser-included offense to robbery. By so stating, the Commentary recognizes

---

**18.** *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Stigars v. State,* 674 A.2d at 481–82.

**19.** *State v. Amad,* 767 A.2d at 811.

**20.** *Amad v. State,* 755 A.2d 386 (Del.2000) (TABLE).

**21.** *Stigars v. State,* 674 A.2d at 482 (citations omitted).

**22.** *Id.* at 483.

**23.** *Id.*

**24.** *Commentary on the Delaware Criminal Code of 1973* § 206.

**25.** *Compare* Del.Code Ann. tit. 11, § 602(a) (Menacing) *with* Del.Code Ann. tit. 11, § 602(b) (Aggravated Menacing).

**26.** *See* Del.Code Ann. tit. 11, § 832(a)(2).

that "threatening the immediate use of force upon a person"-the language for Robbery in the Second Degree and an element of Robbery in the First Degree-is identical to "intentionally places another person in fear of imminent physical injury"—the language for Menacing and an element of Aggravated Menacing. Aggravated Menacing requires only the additional element that the person "display[s] what appears to be a deadly weapon."

The additional element contained in Aggravated Menacing is the same as an additional element of Robbery in the First Degree. Accordingly, we conclude that the General Assembly intended for Aggravated Menacing to be a lesser-included offense of Robbery in the First Degree. Therefore, we hold that the convictions for those separate crimes during the same occurrence must be merged. Consequently, under the facts of this case, we hold that sentencing Poteat separately for each of those crimes violated the protection against double jeopardy that is provided by the Fifth Amendment to the United States Constitution.

### Conclusion

For the reasons set forth above, we hold that the crimes of Aggravated Menacing and the related PFDCF charges are merged with the crime of Robbery in the First Degree. We further hold, that to the extent our decision in *Amad* conflicts with this opinion, it is overruled.[27] Therefore, the judgments of the Superior Court are reversed. This matter is remanded to the Superior Court for further proceedings in accordance with this opinion.

27. *State v. Amad,* 767 A.2d 806 (Del.Super.1999), *aff'd,* 755 A.2d 386 (Del.2000) (TA-BLE).