ANDRE L. NORWOOD, Defendant Below-Appellant,
v.
STATE OF DELAWARE Plaintiff Below-Appellee.
No. 446, 2009.
Supreme Court of Delaware.
Submitted: December 30, 2009.
Decided: March 1, 2010.
Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 1st day of March 2010, it appears to the Court that:
(1) Appellant Andrew L. Norwood ("Norwood") appeals his convictions of Robbery First Degree, Possession of a Firearm during the Commission of a Felony (2 counts), Aggravated Menacing, and Conspiracy Second Degree. Norwood argues that the Superior Court deprived him of a fair trial when it did not re-arrange a portion of the court room to permit a juror to view the defendant. We find no merit to his appeal and affirm.
(2) On August 4, 2008, Naginbhai Patel ("Patel") was working alone at the Getty store on Lovering Avenue in Wilmington. At around eight a.m., Derris Lloyd ("Lloyd") entered the store and bought a bottle of water from Patel. Lloyd then excited the store and returned a couple minutes later with an armed individual alleged to be the Norwood. Lloyd told Patel that he forgot to get a newspaper. Lloyd went behind the counter, reached into the cash register and removed money while Norwood said "hands up." Patel described Norwood as a "slim guy, like five foot, six inch height" and wearing a black hoodie. After taking the money, both individuals left the store.
(3) Patel testified that the store had a video camera that monitors the counter inside the store as well as parts of the parking area outside the store. A video was played at trial showing the robbery in the store. Two people were shown exiting and later entering and a gold Oldsmobile parked at the back bay of the store. The vehicle is shown pulling away after the robbery.
(4) Sharnelle Wright ("Wright") testified that on the day of the robbery, she owned a gold Oldsmobile and that Lloyd, her nephew, was using her car on that date. Wright identified the gold Oldsmobile from the video as her vehicle based on still images taken from the video. She also positively identified Lloyd as being one of the individuals in another still image taken from the video. Wright testified that she had seen Norwood in the past with Lloyd in her vehicle. Wright was shown another still image from the video and identified Norwood as the other individual involved in the crime. One of Norwood's fingerprints was taken from the hood of the gold Oldsmobile. A palm print from Norwood was also found on the trunk exterior surface. Norwood's prints were also found on the right front fender and passenger side exterior window. A black hoodie was found in the trunk of the vehicle, along with a red shirt matching what Lloyd was wearing, and a red ROCA Wear t-shirt with lettering that appeared to match what the co-defendant was wearing. A Family Court payment receipt in the name of Norwood was found inside the vehicle. A magazine for an assault-type weapon and 9 millimeter Luger bullets were found at the residence where Norwood and Lloyd were arrested.
(5) Norwood was arrested and indicted on three counts of first degree robbery, six counts of possession of a firearm during the commission of a felony ("PFDCF"), three counts of possession of a deadly weapon by a person prohibited ("PDWBPP"), three counts of second degree conspiracy, two counts of aggravated menacing, and one count of first degree carjacking, stemming from two separate armed robberies. The case was re-indicted on October 27, 2008, in which one count of first degree robbery, one count of PFDCF, one count of PDWBPP, and one count of second degree conspiracy were dropped. On January 28, 2009, defense filed a motion to sever, and on February 2, 2009, the court granted the motion and severed counts 1-4 and 6-7 from counts 8-14 and 16. The charge of PDWBPP was severed from the others and the parties agreed that it would be decided by the court after the jury verdict on the other charges. The two-day trial commenced on May 12, 2009, on one count of first degree robbery, two counts of PFDCF, one count of PDWBPP, one count of aggravated menacing, and one count of second degree conspiracy.
(6) During opening statements, defense counsel told the jury that the case "all [came] down to the picture in the video" and that they must determine whether Norwood is in it or not. As the State's case was coming to a close, one of the jurors requested through the bailiff that the defendant move his chair or that a podium in his line of sight of the defendant be moved. In a colloquy with counsel, the trial judge noted that "all evidence comes from the witness stand, so it doesn't really too much matter" but he was willing to accommodate the juror if there were no objections. The State suggested that it did not "make a difference." Defense counsel suggested displaying Norwood for the jury or switching seats with him to provide the jury with a better view. Ultimately, the defendant did not move, nor was the courtroom rearranged to promote a better line of sight for the juror after the following exchange:
THE COURT: One of the jurors has asked for him or herself on behalf of everybody, I don't know, if the defendant could move his chair a little bit because the podium blocks him from being seen; the fact of the matter is, that all evidence comes from the witness stand, so it doesn't really too much matter, but if everybody wants to accommodate that, I'm happy to do it, if anybody has any objection, then I would not do it.
PROSECUTOR: Doesn't make a difference to the State, or if you want to leave it alone.
DEFENSE COUNSEL: We could even display  I had a case with Judge Ridgley [sic] and he allowed us to display the defendant because of physical characteristics. I think we're okay with that. The way we did it in that case, it was a walking issue where he limped almost. We don't have that at all.
THE COURT: Well, the request has been to have him move back in his chair a little bit, so let's just deal with that request, and the State apparently doesn't have any position one way or the other.
PROSECUTOR: If the concern is that, the problem is that I don't want to read into what the request is. If the request is, I just haven't seen the person, I would like to see who he is. That's one thing. If they say I'm looking at him for comparative purposes, I think that's another thing. I don't know and I don't want to guess. So, maybe it makes sense to move the podium over or forward or backwards so that everyone can see him. It's on wheels.
THE BAILIFF: I can try, Your Honor. You can't move it too far.
THE COURT: Well, why don't you leave that where it is, and if everybody is in accord, we'll just ask the defendant to move his chair back a little bit, because that's what the request is.
THE BAILIFF: Juror No. 3 has yet to see the defendant's demeanor. I believe that's what she's asking.
THE COURT: Well, demeanor is really not part of it 
THE BAILIFF: Exactly, Your Honor, and she can't see, she has never seen the defendant from where she sets [sic] because she's number three. That's the question.
THE COURT: Well, if the defendant wants to move back, fine. If the, if that's not 
PROSECUTOR: I don't think that's necessary.
DEFENSE COUNSEL: I can switch seats if that works; I would like to accommodate them.
THE COURT: I'm going to let it go the way it is now.
THE BAILIFF: I just wanted to bring it to Your Honor's attention.
(7) Norwood was convicted on all charges. Pursuant to this Court's holding in Poteat v. State,[1] the aggravated menacing and related PFDCF charges were merged. Norwood was sentenced to a minimum mandatory period of incarceration of nine years followed by decreasing levels of community supervision. This appeal followed.
(8) We review claims arising from alleged constitutional violations de novo.[2] However, "[t]his Court, in the exercise of its appellate authority, will generally decline to review contentions not raised below and not fairly presented to the trial court for decision."[3] "This Court may excuse a waiver, however, if it finds that the trial court committed plain error requiring review in the interests of justice."[4] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[5] "Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[6]
(9) After considering the juror's request, the trial judge here stated "if the Defendant wants to move back fine . . . I'm going to let it go the way it is now." Norwood did not object to this decision, nor did he raise the issue again during the trial. The State argues that Norwood waived his present claim because both he and his attorney were aware of the issue, as evidenced by the extensive discussion on the record, and elected to do nothing about it. The State also contends that there was no plain error by the trial court. We agree. None of Norwood's arguments on appeal were fairly presented below. Nor was there plain error by the trial judge under the circumstances of this case.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Poteat v. State, 840 A.2d 599 (Del. 2003).
[2] Jones v. State, 940 A.2d 1, 9-10 (Del. 2007).
[3] Sup. Ct. R. 8; Wainwright v. State, 504 A.2d 1096, 1100 (Del.1986); Jenkins v. State, 305 A.2d 610 (Del.1973).
[4] Monroe v. State, 652 A.2d 560, 563 (Del.1995); accord Mathis v. State, 950 A.2d 659 (Del.2008).
[5] Wainwright, 504 A.2d at 1100; Dutton v. State, 452 A.2d 127, 146 (Del.1982).
[6] Wainwright, 504 A.2d at 1100; Bromwell v. State, 427 A.2d 884, 893 n.12 (Del.1981).